H. Lawrence **GARRETT, III,** Secretary of the Navy, **Appellant,**

v.

**GENERAL ELECTRIC COMPANY,** **Appellee.**

No. 92–1119.

United States Court of Appeals, Federal Circuit.

Feb. 24, 1993.

Allen D. Bruns, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued, for appellant. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Joan M. Bernott. Also on the brief was James T. DeLanoy, III, Sr. Trial Counsel, Litigation Div., Office of General Counsel, Dept. of Navy, of counsel.

Donald P. Arnavas, Wiley, Rein & Fielding, of Washington, DC, argued, for appellee. With him on the brief were Matthew S. Simchak, Clayton S. Marsh and Geoffrey C. Cook. Also on the brief were Paul J. O'Donnell, Ropes & Gray, Boston, MA, and Robert C. Anderson, Counsel, Lynn Aircraft Engines Operation, General Elec. Co., of counsel.

Before NIES, Chief Judge, BENNETT, Senior Circuit Judge, and RADER, Circuit Judge.

RADER, Circuit Judge.

The Department of the Navy appeals a decision of the Armed Services Board of Contract Appeals (Board). The Board held that it had jurisdiction over General Electric Company's (GE) appeal from a nonmonetary Navy order for work corrections. *General Elec. Co.*, ASBCA No. 36005, 91–2 BCA ¶ 23,958, 1991 WL 81497 (1991). Because the Contract Disputes Act of 1978 (CDA or Act), Pub.L. No. 95–563, 92 Stat. 2383 (codified as amended at 41 U.S.C. §§ 601–613 (1988 & Supp. I 1989)), permits appeal of the contracting officer's final decision on a claim, this court affirms.

## BACKGROUND

The Navy awarded GE a series of eighteen production contracts from November 1977 through March 1987. Under the contracts, GE manufactured approximately 1200 jet engines for the F/A–18A aircraft. After accepting a number of new engines, the Navy experienced several incidents of buckling in an engine component known as the after-burner liner. These failures damaged the engine and the aircraft.

Each contract contained an inspection clause from the Federal Acquisition Regulations (FAR) or from an earlier version, the Defense Acquisition Regulations (DAR). These clauses made acceptance of the engines final except for latent defects, fraud, or gross mistakes amounting to fraud. *See, e.g.,* 48 C.F.R. § 52.246–2(k) (1991). In the event of latent defects, the contracts provided remedies such as: (1) a requirement that the contractor correct or replace the item at no increase in contract price; (2) a reduction in contract price for delays; or (3) repayment of an equitable portion of the contract price. *See, e.g., id.* § 52.246–2(1). Each contract also included a FAR or DAR disputes clause. The disputes clauses require the parties to resolve disputes under the Contract Disputes Act.

The Navy paid GE $1.25 million under a separate component improvement program (CIP) to investigate the cause of and suggest a solution for the engine failures. On the basis of the study, the Navy concluded that latent defects—undiscoverable at the time of acceptance—caused the engine liner failures. The Navy directed GE to replace the defective parts in those engines at no additional cost. GE refused and sub-

mitted a proposal to replace the parts at a substantial additional cost to the Navy.

After further meetings and correspondence, the contracting officer (CO) issued a final decision requiring GE to correct the problem at no additional cost to the Navy. The decision vitiated the prior acceptances under the inspection clause. The decision also required GE to return the $1.25 million in CIP funds to the Navy.

GE appealed the CO's decision to the Board. The Board took jurisdiction based on the Navy's assertion of post-acceptance contract rights. The Board reasoned that the Navy's actions constituted a claim by the Government under the CDA.

## DISCUSSION

■ This court reviews whether the Board properly asserted jurisdiction over GE's appeal of the CO's decision. On appeal, the Board's legal conclusion on jurisdiction is not final or conclusive. 41 U.S.C. § 609(b) (1988).

The CDA grants the Board jurisdiction over cases arising from Government contracts for the procurement of equipment and services. 41 U.S.C. § 602(a). In particular, the Act authorizes the Board to exercise jurisdiction over appeals from a CO's final decision on Government or contractor "claims." *Id.* §§ 605(a), 607(d). GE submitted no claims to the CO on the engine defects at the time of the decision. The Act, however, provides that a contractor may appeal a Government claim to the appropriate board without submitting a claim of its own to the CO. *See id.* Thus, only jurisdiction over the Navy's claims under the contract are at issue in this appeal. The Board's jurisdiction depends on whether the Navy's directives under the contract's inspection clause are appealable CDA claims.

The CDA does not specifically define the term "claim." Therefore, this court assesses whether an action amounts to a claim on the basis of "regulations implementing [the CDA], the language of the contract in dispute, and the facts of the case." *Dawco Constr., Inc. v. United States*, 930 F.2d 872, 877 (Fed.Cir.1991). The FAR, the ap-

plicable regulation, defines a claim as a "written demand ... by one of the contracting parties seeking, as a matter of right, [1] the payment of money in a sum certain, [2] the adjustment or interpretation of contract terms, or [3] other relief arising under or relating to the contract." 48 C.F.R. § 33.201 (1991). The GE contracts contained this definition. Therefore, these regulations and the terms of GE's contracts agree on the standard for determining the meaning of "claim" for Board jurisdiction. This court must also assess the facts of this case in assessing the sufficiency of the Navy's claim.

■ The Navy directed GE to correct or replace the defective engines. Under the contract, the Navy had three options. It could have reduced the contract price or demanded repayment of an equitable portion of the contract price. Rather than seek these monetary remedies, the Navy chose "other relief arising under ... the contract." The Navy's alternative to a monetary remedy—the directive to correct or replace defective engines—constitutes "other relief" within the FAR's third category of "claims." Thus, the regulations, GE's contract, and the facts of this case suggest that the Navy's choice of relief—a substitute for monetary remedies—fit within the CDA concept of "claim." Accordingly, the Board correctly determined its jurisdiction to adjudicate this Government claim.

This court also assesses whether the Board's decision to take jurisdiction over the Navy's claim is in harmony with the purpose and structure of the CDA. One primary purpose of the CDA, invoked by both parties in this appeal, is to achieve parity between the jurisdiction of the United States Court of Federal Claims and the boards. The CDA has as one of its purposes the elimination of differences in the jurisdictions of the forums which decide Government contract disputes. *See, e.g.*, S.Rep. No. 1118, 95th Cong., 2d Sess. 12 (1978) 1978 U.S.Code Cong. & Admin.News pp. 5235, 5246 ("The considerable disharmony between the administrative and judicial

systems that oversee the resolution of disputes was a matter of considerable concern to the Procurement Commission.... [The CDA provides a] pragmatic answer."). Thus, the CDA provides for appeals from a CO's decision alternatively to either the Board or directly to the Court of Federal Claims. *See* 41 U.S.C. §§ 607, 609 (1988). The Act further states that the Board "is authorized to grant any relief that would be available to a litigant asserting a contract claim in the United States [Court of Federal Claims]." *Id.* § 607(d). Thus, the CDA creates parity between these two lines of appeal.

■ At the time of briefing and oral argument in this case, the jurisdiction of the Court of Federal Claims did not extend beyond monetary claims. *See, e.g., United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969); *Overall Roofing & Constr. Inc. v. United States*, 929 F.2d 687, 689 (Fed.Cir.1991). Thus, the Government argued that the Board's assertion of jurisdiction over the Navy's claim would disturb parity between the Court of Federal Claims and the Boards. In the interim, however, Congress enacted the Federal Courts Administration Act of 1992 (Courts Act), Pub.L. No. 102–572, 106 Stat. 4506.[1] This 1992 Act changed the doctrine enunciated in *Overall Roofing*.[2] This 1992 Act expanded the jurisdiction of the Court of Federal Claims to embrace some nonmonetary disputes:

> The [Court of Federal Claims] shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978, *including a dispute concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of that Act.*

28 U.S.C. § 1491(a)(2) (as amended by Courts Act § 907(b)(1)) (emphasis added). Thus, Congress specifically afforded the Court of Federal Claims jurisdiction over "other nonmonetary disputes on which a decision of the contracting officer has been issued" under § 605. *Id.* Thus, the Board's decision to take jurisdiction over this Government claim, in light of the Court of Federal Claims' new jurisdiction, preserves jurisdictional parity between the Court of Federal Claims and the boards.

In assessing the sufficiency of the Navy's claim in the context of the CDA, this court also looks to other cases decided under the CDA. For instance, this court has already acknowledged that some nonmonetary disputes, such as terminations for default under the CDA, give rise to Board jurisdiction. In *Malone v. United States*, 849 F.2d 1441 (Fed.Cir.1988), this court treated an appeal to the Board from a termination for default without monetary redress at stake as a Government claim. The court reasoned:

> The government issues [the termination for default] by CO decision, and it is both adverse to the contractor and relates to the contract because it involves a determination that the contractor has failed to fulfill its contractual duties.

*Id.* at 1443. The Board correctly extended the rationale in *Malone* to cover the non-

---

**1.** Under section 907(b)(2) of the Courts Act, the amendments made by the Act apply as follows: The amendment ... shall be effective with respect to all actions filed before, on, or after the date of the enactment of this Act, except for those actions which, before such date of enactment, have been the subject of [a final judgment of the Claims Court or of the Federal Circuit Court of Appeals].

**2.** In *Overall Roofing,* this court stated that the term "claim" used in the CDA "carrie[d] with it the historical limitation that it must assert a right to presently due money." 929 F.2d at 689 (citing *King,* 395 U.S. at 3, 89 S.Ct. at 1502).

The boards, on the other hand, could adjudicate some nonmonetary disputes. *See, e.g., Malone v. United States,* 849 F.2d 1441, 1445 (Fed.Cir. 1988) (holding that a termination for default constituted a Government "claim"). The 1992 Courts Act, by its terms, grants the Court of Federal Claims jurisdiction over certain nonmonetary claims. *See, e.g.,* 138 Cong.Rec. S17798 (1992) (statement of Sen. Heflin) ("The amendment will restore the option of appealing any final decisions to either the Court of Federal Claims or agency board of contract appeals at [sic] was intended in the Contract Disputes Act.").

monetary substitute for monetary relief requested in this case.

■ Finally, because jurisdictionally limited to "final decision[s]" of the Board, 28 U.S.C. § 1295(a)(10) (1988), this court also reviews the Board's decision for finality. In reviewing appeals from the contract appeal boards, this court has declined to apply a strict finality requirement to board appeals:

The legislative history of the CDA and longstanding practice of agency boards ... counsel against applying a rigid district court concept of finality. The legislative history of the CDA indicates that Congress desired to restore, to the extent possible, the original purpose of the boards of contract appeals "to provide a swift, inexpensive method of resolving contract disputes," S.Rep. No. 1118, 95th Cong., 2d Sess., *reprinted in* 1978 U.S.Code Cong. & Ad.News 5235, 5246 (S.Rep. No. 95–1118).

*Dewey Elecs. Corp. v. United States*, 803 F.2d 650, 655 (Fed.Cir.1986).

In *Dewey*, the Board issued a decision "limited to consideration of the entitlement issue." *Id.* at 653. The contractor had submitted nine claims, five of which the Board found in the contractor's favor, remanding them to the contracting officer for a determination of damages. The Board found no entitlement under the remaining four claims and the contractor appealed those claims. On appeal, the Government argued that the decision of the Board was not final as long as damages had not been resolved on the remanded claims. Despite the absence of a damages determination, this court accepted jurisdiction over the Board's decision. *Id.* at 658. The *Dewey* court relied on the Supreme Court's standard for finality in administrative proceedings:

[W]hether the process of the administrative decisionmaking has reached a stage where judicial review will not disrupt the orderly process of adjudication and whether rights or obligations have been determined or legal consequences will flow from the agency action.

*Id.* at 654 (quoting *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71, 91 S.Ct. 203, 209, 27 L.Ed.2d 203 (1970)).

As in *Dewey*, the Board here "fully addressed all of the decisions ... of the contracting officer then on appeal to the Board." *Dewey*, 803 F.2d at 658. The Board entertained and resolved GE's appeal. Following its decision, the Board had nothing more to do. Moreover, the Board's decision had immediate legal consequences. For these reasons, the Board's decision was final in the sense of conferring appellate jurisdiction on this court. *See Marine Terminal*, 400 U.S. at 71, 91 S.Ct. at 209; *Dewey*, 803 F.2d at 658.[3]

The Board's decision noted an acute concern over the prospect of piecemeal litigation and premature involvement in contract administration. As the Board noted, these concerns are not new. *See, e.g.*, R. Nash & J. Cibinic, *Nonmonetary Claims: One Small Step for Man*, 2 The Nash & Cibinic Rep. ¶ 61 (1988) ("Although we favor such a holding [extending *Malone* to cover other nonmonetary disputes] it is not without a down side. It would have the potential of increasing the likelihood of litigation *during* contract performance and we are not sure that this is such a good idea."). This case, however, does not raise such a specter. Following performance under the contract, the Navy revoked final acceptance and chose to pursue a nonmonetary form of relief under the contract. The Navy's choice of remedy, after acceptance of performance, should not dictate the viability of

---

**3.** In *Dewey*, this court addressed the inefficiency of a rigid finality rule:

For example, in order to have reasonably expeditious resolution of entitlement through appeal, the contractor would find it necessary to seek a decision from the contracting officer on both the quantum and entitlement issues and appeal both to the board to be adjudicated at the same time. At both levels, addition-

al burdens would be placed on the parties, as well as the adjudicatory officials, to marshal and analyze detailed cost data and financial information pertaining to damages, all of which may be unnecessary if, on appeal, the entitlement is decided adversely to the contractor.

803 F.2d at 656.

an appeal. In his concurrence below, Chairman Williams found that the Government's revocation of acceptance, "under the circumstances of these appeals ... exceed[s] the bounds of ordinary contract administration resulting in a Government claim under the FAR." This court agrees.

## CONCLUSION

The Board's exercise of jurisdiction over the CO's decision regarding the Navy's directives to correct work during contract performance was proper. In addition, the Board properly exercised jurisdiction over the claim for a refund of the CIP funds. Accordingly, the Board's decision is

AFFIRMED.

NIES, Chief Judge, dissenting.

This appeal is from a final decision of a three-member panel of the ASBCA holding, *inter alia,* that the government improperly directed repair or replacement, because of purported latent defects, of certain jet engines which the government had accepted. Underlying the decision on the merits is an earlier decision by an expanded panel of the Board denying the government's motion to dismiss for lack of jurisdiction. The government asserted that the directive by the contracting officer (CO) was not appealable because it was not a CO's decision on a government "claim" (41 U.S.C. § 605(a)), which is required to take an appeal. (41 U.S.C. § 606.) The Board rejected the government's argument, ruling that, although generally a "claim" is not ripe for appeal unless a demand for money is made, the CO's repair or replacement directive was a final decision on a government claim for relief without a monetary demand.*

The sole question raised on appeal is the jurisdiction issue, namely: is the directive of the CO to the contractor, General Electric, to replace accepted work, which General Electric proceeded to do, a final decision on a government claim which General Electric had a right to appeal to the Board? If not appealable to the Board, the Board's decision on the merits would not be review-

able by this court. The majority of this panel holds that the CO's decision was a final decision on a government "claim" so that appeal rights followed. I would hold that the case on appeal involves only an advisory opinion of the Board on the merits. Thus, a decision by this court would not dispose of any government or contractor's claim. I, therefore, would remand to the Board with directions to dismiss.

The jurisdiction decision was rendered by the Senior Deciding Group of ASBCA. Ten members joined the majority opinion; the Chairman concurred in result; four members, including three Vice Chairmen, dissented with opinions. The importance and debatability of the issue is self-evident from this disposition.

The Contract Disputes Act "does not explicitly list comprehensive requirements for a 'claim' in all situations.... Therefore, a contested claim's sufficiency may properly be evaluated against regulations implementing the [Act], the language of the contract in dispute, and the facts of the case." *Dawco Constr., Inc. v. United States,* 930 F.2d 872, 877 (Fed.Cir.1991). The pertinent regulation, FAR 52.233-1, states:

Claim, as used in this clause, means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to this contract.

48 C.F.R. § 52.233-1; *accord* FAR 33.201, 48 C.F.R. § 33.201.

Prior to the Contract Disputes Act of 1978 (CDA), the boards of contract appeals had jurisdiction only over disputes falling within the disputes clause of a contract, that is, a demand of right *under* the contract, for example, to an equitable adjustment. The CDA greatly expanded the jurisdiction of the Board to cover breach of contract claims as well. *See* J. Cibinic and R. Nash, *Government Contract Claims,*

---

* The government also demanded a return of $1.25 million in CIP funds but this demand was not treated as part of the demand for repair or replacement.

pp. 947–948 (1986). The language in the CDA respecting Board jurisdiction and the new language in the recent amendments expanding the CDA jurisdiction of the United States Court of Federal Claims to "claims" and "disputes" is obscure without this understanding.

Despite the broad language of the above FAR regulation, the Board has not interpreted the term "claim" expansively. Indeed, in this case, both the majority and the minority of the Board were concerned with defining a government "claim" so as not to encompass ordinary contract administration decisions by a CO which the language of the regulation could be read to encompass. The majority held the demand for repair or replacement was a government claim because it was an alternative form of "relief" provided for in the contract, where accepted goods were latently defective. The government could have demanded money damages or a price adjustment instead. If the government had demanded money, that would have been a typical government claim. To distinguish the CO's decision here from an ordinary directive to proceed during the course of a contract, it is important to note that the Board's majority was careful to limit its decision respecting what is a government "claim" to the situation where goods had been *accepted* by the government and the acceptance was *withdrawn*. It likened this situation to a default termination which has long been held to be a government "claim" reviewable by the Board although nonmonetary. (Majority Opinion of Ruth Burg, Member.)

In the view of the Board members in the minority, the facts showed a classic case where a contractor should perform the work, as it was required to do under the contract, and file its own claim for compensation for extra work. "To say that, *ipso facto*, a Government directive after acceptance [of goods] becomes a Government claim seems rather strained. [The Board must] refrain from taking cognizance over matters which may be construed as calling for 'advisory', 'non-appealable', and/or 'tentative' decisions." (A.J. Spector, Vice Chairman, dissenting opinion.) Further, the minority believed the majority's inter-

pretation that the FAR regulations defining a "claim" encompassed the government's directive to proceed to be contrary to the statute. One judge noted that, while the Board was considering the jurisdictional issue, General Electric had already submitted claims, in excess of $18 million, to the CO for the work performed. He opined further that to allow the contractor to appeal at this stage was make-work and opened the barn doors to involvement in contract administration and piece meal review. (R.J. Gomez, Member, dissenting opinion.) Another spoke of the claim being "premature" and faulted the majority's comparison of the instant directive to a notice of default termination. Under FAR 49.402(g)(7), a default termination notice is specifically made appealable although no monetary amount has been asserted. This is because of the inability of a contractor to object to the termination *at all* unless the government makes a monetary demand against the contractor for excess procurement costs. Here, however, "no such adverse impact attaches to the contracting officer's direction to perform corrective work pursuant to an Inspection or Warranty clause." (V.J. Riismandel, Vice Chairman, dissenting.) I have attached each of these dissents as an Appendix.

As addressed by the Board's majority, the case appears to involve only the Board's jurisdiction. I see it as a question equally, if not primarily, involving this court's jurisdiction. Under 28 U.S.C. § 1295(a)(10), this court has jurisdiction to review only "final decisions" of the Board. The Board renders decisions on appealed decisions of a CO on a "claim" of the contractor or of the government. Thus, the jurisdiction of this court as well as the Board ultimately must rest on an appealable "claim." *Dewey Electronics Corp. v. United States*, 803 F.2d 650 (Fed.Cir.1986).

As analyzed in the dissenting opinions of Administrative Judges Gomez and Riismandel, the Board has required, with few exceptions, that to be a "claim" a monetary demand must be made. However, I believe the emphasis on a claim being for money is misdirected. The focus, in my mind, should

be on whether the particular dispute is *finally* resolved. That generally requires an order by the Board that one party owes a .sum certain to the other or, alternately, owes nothing. Without such order, the dispute is not *finally* resolved. But a claim need not necessarily entail a demand for money to be finally resolvable, as acknowledged in the opinion of Administrative Judge Riismandel.

The term "claim" has different scope in different contexts. Clearly every dispute over the meaning of a contract term is not a "claim" even under the regulation. There must be a written demand "as of right" for particular relief. One overriding consideration is, therefore, that the relief sought may be granted or denied by the Board and, as far as the jurisdiction of this court is concerned, the presence of an actual case or controversy respecting such relief.

In this proceeding, the contractor has never asserted that it was advancing a claim of its own. Its appeal must, therefore, rest on the purported assertion by the government of a "claim" which was decided adversely to the contractor by the CO. The question then is: what is the government's claim? The CO demanded that the contractor replace or repair accepted work, *i.e.*, a demand for specific performance. However, there is a significant difference between this demand and the usual claim for such relief. The government did not need an order of the Board directing specific performance. By the provisions in the contract, the government was entitled to demand replacement of latently defective goods, and the contractor was required to satisfy that demand *prior to* resolution of any dispute respecting the asserted latentness of the defects.** No order by the Board on the government's purported "claim" could either enforce or excuse *performance*.

In enacting the CDA, Congress expressly acknowledged that

[t]he rights of Government contractors ... are unique since they have been required by the language of the contract, for example, ... the disputes article, to perform the work as directed by the Government without stopping to litigate. Thus, Government contractors must perform and then argue about the amount of the equitable adjustment at some later point in time.

S.Rep. No. 1118, 95th Cong., 2d Sess. 32, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5235, 5266.

Thus, the government's demand for performance, if deemed a "claim" for relief, as the Board held, is an ephemeral claim at best. If the contractor did not perform the work, the government's "claim" became one for damages for breach, a monetary claim. There is no government claim of this nature in this appeal. If the contractor performed the work, as here, the government's purported claim for specific performance became entirely moot. Obviously, the government, after the contractor's performance, simply had no "claim" for performance to assert against the contractor.

Given the performance by GE in this case, the CO's demand for GE to perform was satisfied. Thus, the Board's ruling that the defects were not latent was given on a "claim"—if a claim at all—that no longer existed. In this context, the Board's decision is merely advisory. That the issue is germane to GE's claim for compensation does not make the only purported "claim" before the Board a live controversy.

One may ask what difference it makes whether the ruling on the merits is made technically on the government claim or on the pending contractor's claim. What I see here is manipulation of the adjudicatory system so that the contractor will obtain a decision on liability alone, *i.e.*, a piece-meal appeal of part of its own claim, thereby circumventing the need for a *final* decision, including resolution of a monetary amount, before an appeal can be taken to this court.

** A remarkably parallel case is *Kalish–Jarcho, Inc. v. City of New York*, 72 N.Y.2d 727, 536 N.Y.S.2d 419, 533 N.E.2d 258 (1988), where a declaratory judgment action by a contractor was dismissed because the contract required performance regardless of the dispute.

Interlocutory appeals from the Board are not statutorily permitted.*** Further, I see no compelling policy reasons to extend the jurisdiction of the Board to this non-monetary claim where, unlike a termination for default, the contractor has a ready means of relief by filing its own claim which it has done in this case.

In sum, I conclude that the only issue this court can resolve is the jurisdictional issue. On that matter, I would reverse the Board's decision. Respecting the merits, I would remand with directions to the Board to vacate its opinion and to dismiss.

### APPENDIX

### DISSENTING OPINION BY ADMINISTRATIVE JUDGE SPECTOR

Under our precedents the direction of the contracting officers to perform the alleged extra work, even if designated a "final decision," would not be a Government claim. *H.B. Zachry Co.,* ASBCA No. 39202, 90–1 BCA ¶ 22,342 [1989 WL 123866]; *Winding Specialists Co., Inc.,* ASBCA No. 37765, 89–2 BCA ¶ 21,737 [1989 WL 32987]. *See also, Woodington Corporation,* ASBCA No. 37272, 89–2 BCA ¶ 21,602 [1989 WL 15567]; *Bell Helicopter Textron,* ASBCA No. 35950, 88–2 BCA ¶ 20,656 [1988 WL 44376], motion for recon. denied 88–3 BCA ¶ 21,048 [1988 WL 83993]. As stated in *H.B. Zachry Co., supra,* "This is a classic case where a contractor should perform the work and file a claim."

To the extent that the majority opinion turns on the concept of "acceptance," the Board's decision should not rest on such a slender reed. The contract clauses simply state that acceptance shall be "conclusive" or "final and conclusive" except for certain enumerated conditions. To say that, *ipso facto,* a Government direction after acceptance becomes a Government claim seems rather strained.

Apart from our precedents, there is, of course, the underlying issue as to the ex-

tent to which we should regard as justiciable matters which primarily smack of contract administration. To put it another way, to what degree should we refrain from taking cognizance over matters which may be construed as calling for "advisory," "non-appealable," and/or "tentative" decisions? *Teledyne Continental Motors, General Products Division v. United States,* 9 FPD ¶ 97, 906 F.2d 1579 (Fed.Cir. 1990); *Arctic Corner, Inc. v. United States,* 845 F.2d 999 (Fed.Cir.1988). The Courts recognize the necessity to limit matters to be considered by them for declaratory judgment. I would exercise similar restraint so as to focus our energies primarily on appeals presenting definitized monetary claims, granting such "other relief" on a basis more stringent than that expressed in the majority opinion.

I dissent, except for the Government's monetary claim in ASBCA No. 36005.

/s/ Alan M. Spector
ALAN M. SPECTOR
Administrative Judge
Vice Chairman, Armed Services
Board of Contract Appeals

The undersigned member of the Senior Deciding Group, Armed Services Board of Contract Appeals, concurs in the above dissenting opinion.

/s/ William J. Ruberry
WILLIAM J. RUBERRY
Administrative Judge
Vice Chairman, Armed Services
Board of Contract Appeals

### DISSENTING OPINION BY ADMINISTRATIVE JUDGE GOMEZ

I join the dissenting opinions of my colleagues with the following elaboration.

The majority relies upon the claim definition set forth in Federal Acquisition Regulation (FAR) subpart 33.2, Disputes and Appeals. They hold that assertion of the Government's post-acceptance rights is a Government claim because it asserts "other

---

*** For example, the expanded Board's decision on jurisdiction was interlocutory and not appealable.

relief arising under or relating to the contract".

Our taking jurisdiction on this ground is ill-advised. While we heretofore have considered a few factual situations as describing nonmonetary Government claims, the majority has not shown that we have considered a direction by the contracting officer to the contractor to perform contract work to comprise a claim warranting our taking jurisdiction. And, there is good reason for the majority to come up empty-handed in this regard. Indeed, our precedent, which the majority asks us to overrule, teaches the contrary. *H.B. Zachry Co.*, ASBCA No. 39202, 90–1 BCA ¶ 22,342 [1989 WL 32987]; *Winding Specialists Co., Inc.*, ASBCA No. 377765, 89–2 BCA ¶ 21,342 [1989 WL 32987]. See also *MGM Contracting Company, Inc.*, ASBCA No. 26895, 83–1 BCA ¶ 16,191 [1982 WL 7951]. Our precedent is founded upon solid ground.

The majority's reliance upon the phrase in the FAR, "other relief arising under or relating to the contract," to support their position unreasonably interprets the regulation and is not consistent with the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–613. The majority runs afoul of the statutory mandate, set forth at 41 U.S.C. § 607(e), to "provide to the fullest extent practicable, informal, expeditious, and inexpensive resolution of disputes." Taking up this appeal in advance of the agency's consideration of the underlying monetary claims is a make work exercise born of improvidence.

No claim is before us. Until now there has been no precedent that a direction to correct work under the inspection clause results in a claim over which we have jurisdiction. Indeed, while we are considering the jurisdictional aspects of the matters before us, appellant, in *General Electric*, has submitted claims, in excess of $18 million, to the contracting officer in ASBCA No. 36005. More are likely to come under ASBCA No. 38152. We are asked to assume jurisdiction before these claims have been analyzed by the agency.

The majority opens the barn doors for involvement in what Judge Spector refers to as "matters which primarily smack of contract administration." Will we also take jurisdiction when a contractor is directed to perform work under the changes clause?

This same concern has been expressed by Professor John Cibinic, Jr., a recognized authority and commentator in Government procurement law:

Although we favor such a holding [extending *Malone* decision to other types of nonmonetary claims] it is not without a down side. It would have the potential of increasing the likelihood of litigation *during* contract performance and we are not sure that this is such a good idea. Traditionally, although not without some notable exceptions, litigation has occurred after performance has been completed or the contract has been brought to an end through termination. But, with a broader CDA jurisdiction the parties may be motivated to seek resolution of their disputes *before* performance is completed, with the result that the Claims Court and the BCAs will become embroiled in contract administration. [Emphasis in the original]

*Nonmonetary Claims: One Small Step for Man*, 2 The Nash & Cibinic Report ¶ 61 (October 1988).

I respectfully dissent.

/s/ Robert J. Gomez
ROBERT J. GOMEZ
Administrative Judge
Member of the Armed Services
Board of Contract Appeals

DISSENTING OPINION
BY ADMINISTRATIVE
JUDGE RIISMANDEL

I respectfully dissent from the majority's opinion on grounds set forth in the opinions of Judges Gomez and Spector, with the following supplementation.

The issue here is not "whether Government claims against contractors under the CDA must necessarily be limited to claims seeking the payment of money," as the

majority apparently prefers to approach it. This was answered already in our opinion in *McDonnell Douglas Corp.*, ASBCA No. 26747, 83–1 BCA ¶ 16,377 [1983 WL 7475], *aff'd in part, rev'd in part* (on issues not relevant here), 754 F.2d 365 (Fed.Cir.1985). Only the narrow issue of the Government's enforcement of its post-acceptance (latent defect) rights, and adherence to previous holdings, is now before the Board.

The majority opinion refers to our 1982 decision in *MGM Contracting Company, Inc.*, ASBCA No. 26895, 83–1 BCA ¶ 16,191 [1982 WL 7951], where this issue may have come up for the first time. In that case it arose in connection with a contracting officer's final decision directing the contractor to repair allegedly defective airfield joints pursuant to the "Warranty of Construction" clause, without making a money demand upon the contractor.

In its contractual effects, this warranty clause (1974 APR) parallels the Inspection clauses involved in the instant disputes by authorizing the Government to "vitiate" or "revoke" final acceptance.

Although the Board in that case did not have to rule directly on the issue raised in the Government's motion to dismiss, i.e., whether the CO's direction constituted an appealable Government's claim, the majority opinion fails to note that we endorsed with approval the parties' view that the appeal "may be premature." The Board stated:

> The proposed dismissal will enable the parties to complete the steps required for the enforcement of the warranty before proceedings are resumed before the Board. At that time an appeal could be taken from the contracting officer's decision making a demand upon the contractor for costs of corrective work or denying the contractor's claim should the latter elect to proceed with the corrective work as directed by the contracting officer in his decision of 4 January 1984. [citations omitted]

A similar situation is present in the instant cases. In ASBCA No. 36005, the parties have already proceeded further and the contractor has filed a claim for the costs of the directed repairs and corrections. Thus, there would be even more reason to consider the CO's direction of 9 November 1988 a "premature" claim than in *MGM Contracting*. My esteemed colleagues in the majority have not presented persuasive reasons why the Board should now abandon this view adhered to in principle for almost eight years.

Instructive in this respect are FAR provisions at 46.706(b)(2) which describe the alternative remedies available to the Government under warranty clauses in the course of contract management (administration). Issuance of a contracting officer's decision at that stage is not contemplated or directed. The alternative remedies under warranty clauses are comparable to those under the latent defect provisions of the Inspection clause.

The comparison of the latent defect "claim" with default termination is also flawed. As the court pointed out in *Malone v. United States*, 849 F.2d 1441, 1444 (Fed.Cir.1988), one of the reasons to treat the termination as a claim was that "the BCAs have historically accepted appeals from a CO's decision terminating a contract for default before either the government or the contractor submitted a monetary claim related to the termination."

I might add that the applicable regulation in FAR 49.402(g)(7) considers the default termination notice to be a contracting officer's "decision" and specifically directs that it must include the statement of the right to appeal under the Disputes clause. There is no such regulatory provision for an appealable contracting officer's decision regarding the Government's election between the alternative remedies available under the Inspection clauses.

The significance of the Board's historical (pre-CDA) practice is further underlined by the majority's citation to *McDonnell Douglas Corp.*, ASBCA No. 26747, 83–1 BCA ¶ 16,377 [1983 WL 7475], *aff'd in part, rev'd in part* (on issues not relevant here), 754 F.2d 365 (Fed.Cir.1985). The Board cited there a series of cases in which it had either interpreted contract terms or deter-

mined the parties' respective rights and obligations without monetary relief having been requested (at 81,421–22), but none of these involved disputes arising under warranty or inspection clauses. This opinion thus could hardly serve as a precedent for now overruling the holding in the *Zachry* case.

The Board's assumption of jurisdiction in pre-CDA cases such as *Hercules Engineering* and *Arrow Aluminum, supra,* does not support the majority's conclusion either. These appeals were taken pursuant to a Disputes clause which provided for the issuance of a contracting officer's decision on a "dispute concerning a question of fact" and an appeal therefrom. There was no prerequisite of a Government "claim" for the Board's jurisdiction as is the case under the CDA. *Paragon Energy Corporation v. United States,* 645 F.2d 966, 971 (Ct.Cl.1981); *see also Chandler Manufacturing and Supply,* ASBCA Nos. 27030, 27031, 82–2 BCA ¶ 15,997 [1982 WL 43357]. Further, in these cases there was no direction to the contractor to perform any work under the contract; the Government had simply *rejected* the delivered supplies because of the alleged latent defect.

In *Malone,* the court also emphasized that a default termination could have adverse consequences for a contractor (debarment) and the contractor would have no recourse to contest the validity of the termination if the Government did not incur excess reprocurement costs or there were no convenience termination costs unless it could appeal the CO's decision to terminate the contract for default. No such finality or adverse impact attaches to the CO's direction to perform corrective work pursuant to an Inspection or Warranty clause. At this stage contract performance had not ceased, as was the case in *Simon Lono Limited,* ASBCA No. 22122, 78–1 BCA ¶ 13,016 [1978 WL 2165], where we stated that "the contract did not end with completion and acceptance of the construction work; it was still executory with respect to the one-year warranty of construction" (at 63,454). In other words, the latent defect

provision "avoids the preclusive effect of final acceptance when latent defects are involved." *Joseph H. Roberts v. United States,* 357 F.2d 938, 948 (Ct.Cl.1966).

The Board has not hesitated to decline jurisdiction on the ground of "prematurity" in other situations. The best example is an appeal from the assessment of excess procurement costs when the Government has made a demand for money upon the contractor. Although the previous regulations (ASPR, DAR) directed the CO to issue a final decision and make a demand upon the contractor as soon as the repurchase contract had been awarded, the Board (and courts) consistently held that such purported final decisions were premature and dismissed the appeals therefrom without prejudice. The proper time for the Government to proceed with its claim was after the repurchase contract was completed and payment made. *See* discussion and case citations in *United Aero, Inc.,* ASBCA No. 26967, 83–1 BCA ¶ 16,268 [1983 WL 8413], and cases cited.

It should also be mentioned that while the U.S. Court of Appeals for the Federal Circuit has approvingly cited the DAR (FAR) definition of "claim," it has not directly ruled on the issue involved here. *Federal Electric Corporation,* ASBCA No. 24002, 82–2 BCA ¶ 15,862 at 78,652 [1982 WL 7801] and cases cited, *aff'd,* No. 83–571 (Fed.Cir. July 19, 1983), 2 FPD ¶ 9. I note, however, that in a recent opinion the Federal Circuit, in distinguishing between the jurisdictions of the U.S. Claims Court and the Boards of Contract Appeals, stated in reference to various provisions of the Contract Disputes Act that the word "claim" "carries with it the historical limitation that it must assert a right to presently due money" (Sec. 14(i)) and "those claims are limited to demands for money presently due and owing" (Sec. 10(a)(1)). *Overall Roofing & Construction, Inc. v. United States,* Appeal No. 90–5113 [929 F.2d 687, 688–89, 689–90] (March 29, 1991), slip op. at 5, 7, *aff'g* 20 Cl.Ct. 181 (1990) (U.S. Claims Court has no jurisdiction over a case contesting only the propriety of a termination for default and presenting no claim for money).

In conclusion, the direction to perform corrective work pursuant to the Inspection clause provision regarding latent defects does not constitute the initiation of a Government claim that requires issuance of an appealable contracting officer's decision (FAR 33.206(b)).

Except for the Government's monetary claim in ASBCA No. 36005, I would dismiss all three appeals for lack of jurisdiction.

/s/ V. John Riismandel
V. JOHN RIISMANDEL
Administrative Judge
Vice Chairman, Armed Services
Board of Contract Appeals