ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of -- | ) | |
| | ) | |
| Parsons Government Services, Inc. | ) | ASBCA No. 62113 |
| | ) | |
| Under Contract No. W912DY-09-D-0062 *et al.*) | | |

APPEARANCES FOR THE APPELLANT: Kevin J. Slattum, Esq.
Aaron S. Ralph, Esq.
  Pillsbury Winthrop Shaw Pittman LLP
  Los Angeles, CA

APPEARANCES FOR THE GOVERNMENT: Arthur M. Taylor, Esq.
  DCMA Chief Trial Attorney
Srikanti Schaffner, Esq.
  Trial Attorney
  Defense Contract Management Agency
  Carson, CA

OPINION BY ADMINISTRATIVE JUDGE D'ALESSANDRIS

Pending before the Board is the motion to dismiss for lack of subject matter jurisdiction filed by respondent, the Defense Contract Management Agency (DCMA or government). Appellants, Parsons Government Services, Inc. (PGSI), formerly Parsons Infrastructure & Technology Group (PI & TG), and Parsons Constructors & Fabricators (PCFI) (collectively Parsons) appeal from a contracting officer's final decision denying its claim regarding incurred costs from the sale and leaseback of a building in Pasadena, California. We find that the claim is barred by the statute of limitations and that it fails to assert a valid Contract Disputes Act (CDA) claim, and grant the government's motion to dismiss.

STATEMENT OF FACTS (SOF) FOR PURPOSE OF THE MOTION

The relevant facts are not in dispute. PGSI and PCFI are both wholly-owned subsidiaries of the Parsons Corporation (PC) (compl. ¶¶ 5-9).[1] In the 1970s the parent entity (PC) constructed the Pasadena Tower Building (compl. ¶ 21). The government compensated Parsons for the use of the building through depreciation charges and later use

_____

[1] On August 28, 2019, Parsons submitted a request to file a first amended complaint to correct the omission of damage amounts in paragraphs 187 and 199, and to correct typographical errors. None of these changes are relevant to the pending motion to dismiss.

charges recovered through Parsons' incurred cost submissions (compl. ¶¶ 22-36). In 2011, PC sold the Pasadena Tower Building, and other nearby buildings, to a non-affiliated third party (compl. ¶¶ 38-39). The parent entity, PC, through another subsidiary then leased-back the Pasadena Tower Building with a 15 year lease (compl. ¶¶ 45-47; R4, tab 3).

In September 2012, Parsons submitted to the government its FY2011[2] final indirect cost rate proposals which included PGSI and PCFI's allocated portion of the lease costs for the Pasadena Tower Building and the gain on the sale of the building (R4, tabs 4-6). Parsons' incurred cost proposals were still pending in March 2018, when, during discussions with the government regarding the incurred cost proposals, Parsons sent a letter to the Corporate Administrative Contracting Officer (CACO) arguing that it was entitled to building lease costs in excess of the amounts it proposed in its indirect rate proposal roughly five and half years earlier (R4, tab 13). Parsons concluded the letter by "respectfully request[ing] that the Government recalculate lease cost allowability, as well as the separate allowability of the other building costs the company incurred in 2011 and 2012 (*id.* at G-533-34). Notably, Parsons did not submit a revised indirect cost rate proposal incorporating the costs asserted in the letter, and did not include a claim certification.

In September 2018, the CACO issued separate unilateral rate determinations for PGSI and PCFI for FY2011. The unilateral rate determinations rejected certain lease costs included in Parsons' indirect cost rate proposals, and did not address Parsons' costs that were first raised in its May 2018 letter. (R4, tabs 15-16) Relevant to this appeal, the CACO stated in her unilateral rate determinations that "it is my final determination that [PGSI] included $1,237,603 of unallowable indirect costs in its Proposal" (R4, tab 16 at G-543; *see also* R4, tab 15 at G-538 for nearly identical language in the unilateral rate determination for PCFI). The CACO directed Parsons to submit adjustment vouchers for all affected contracts if the unilaterally determined rates differed from the rates used in Parsons' interim billings (R4, tab 15 at G-542, tab 16 at G-548). However, the unilateral rate determinations did not include the customary notice of appeal rights (R4, tabs 15-16). The CACO sent the separate unilateral rate determinations to Parsons by Federal Express, and Parsons signed for the delivery on September 13, 2018 (gov't mot, ex. G-1, declaration of CACO Grace Kim, dated September 3, 2019; ex. C).

Over six months later, on March 24, 2019, Parsons submitted a certified claim to the CACO, captioned "Certified Claim for Allowability of FY2011 Leaseback Costs, Withdrawal of Unilateral Rate Determination and Interpretation of FAR Contract Terms" (R4, tab 17). Parsons asserted a breach of contract due to the government's failure to allow and pay leaseback costs, and other related costs, for FY2011. Parsons requested withdrawal of the unilateral rate determinations and return

---

[2] The contractor's fiscal year is the calendar year (compl. ¶ 95).

of the portion of the rates paid on invoices applying the unilaterally determined rates (R4, tab 17 at G-555). Parsons' claim also asserted a purported claim for contract interpretation regarding the Federal Acquisition Regulation (FAR) provisions for leaseback costs (*id.*). On May 24, 2019, the CACO issued a final decision denying Parsons' claim and finding that it was not a valid claim because it did not assert a sum certain, and because it was barred by the six-year statute of limitations (R4, tab 18). On July 1, 2019, Parsons submitted this appeal to the Board.

DECISION

A. <u>Standard of Review</u>

Parsons bears the burden of proving the Board's subject matter jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exchange Service*, 846 F.2d 746, 748 (Fed. Cir. 1988); *United Healthcare Partners, Inc.*, ASBCA No. 58123, 13 BCA ¶ 35,277 at 173,156. Pursuant to the CDA, 41 U.S.C. §§ 7101-09, a contractor may, "within 90 days from the date of receipt of a contracting officer's decision" under 41 U.S.C. § 7103 appeal the decision to an agency board. 41 U.S.C. § 7104(a). Our reviewing court, the United States Court of Appeals for the Federal Circuit, has held that CDA jurisdiction requires "both a valid claim and a contracting officer's final decision on that claim." *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010) (citing *James M. Ellett Constr. Co. v. United States*, 93 F.3d 1537, 1541-42 (Fed. Cir. 1996)).

B. The September 2018 Unilateral Rate Determination Is A Final And Unappealed Government Claim

Resolution of the Government's motion to dismiss requires that we first address the September 2018 unilateral rate determination. As set forth in the facts above, this appeal involves the treatment of Parsons' leaseback costs for the Pasadena Tower Building. It is well settled that a unilateral rate determination is a government claim. *See* FAR 52.216-7(d) (4) ("Failure by the parties to agree on a final annual indirect cost rate shall be a dispute within the meaning of the Disputes clause."); *Edward Hayes, as Liquidator of Base Operation Services GMBH*, ASBCA No. 59829, 16-1 BCA ¶ 36,412 at 177,541; *Fiber Materials, Inc.*, ASBCA No. 53616, 07-1 BCA ¶ 33,563 at 166,251. Upon receipt of the unilateral rate determination, Parsons could either accept the determined indirect cost rate as the final rate, or appeal the unilateral rate to this Board or the Court of Federal Claims within the time permitted by the CDA. Parsons did not appeal within the allowable time period (90 days for appeals to the Board) and the FY2011 unilateral rate determination became Parsons' final indirect cost rate. *See* FAR 2.101 ("*Final indirect cost rate* means the indirect cost rate established and agreed upon by the Government and the contractor as not subject to change.").

3

Parsons' March 2018 letter regarding additional lease costs does not change the finality of Parsons' FY2011 indirect cost rate. The parties disagree whether the lease costs at issue could be raised by Parsons' letter, or whether Parsons was required to submit a revised indirect cost rate proposal to properly place the costs before the CACO (gov't mot. at 9-10; app. resp. at 6-7, 9-10); however, the proper procedure is irrelevant to our analysis. If Parsons' lease costs were properly raised by the letter, they were rejected by the unilateral rate determination which is now the final indirect cost rate for FY2011. If Parsons' lease costs were not properly raised by the letter, they were not considered in the unilateral rate determination, and the unilateral rate determination is still the final indirect cost rate for FY2011.

    C. Parsons' March 2019 Claim Pertaining To FY2011 Indirect Rates, and Withdrawal of the Unilateral Rate Determination, Is Barred By The Statute Of Limitations

Parsons submitted a claim to the CACO on March 24, 2019. The document sought (1) FY2011 leaseback costs; (2) withdrawal of the unilateral rate determination; and (3) interpretation of FAR contract terms (R4, tab 17 at G-555). Parsons' claims for (1) FY2011 leaseback costs and (2) withdrawal of the unilateral rate determinations are barred by the statute of limitations. As noted in the facts, the CACO issued these unilateral rate determinations on September 12, 2018 (R4, tabs 15-16). The CACO sent the unilateral rate determination to Parsons by Federal Express, and Parsons signed for the delivery on September 13, 2018 (gov't mot. at ex. G-1, ex. C). The CDA provides that a contractor must take an appeal to this Board within 90 days of receipt of a final decision 41 U.S.C. § 7104(a).[3] Thus, Parsons must have filed its appeal with the Board on or before December 12, 2018, for its claim to be timely. Parsons did not file its appeal until July 1, 2019, more than six months after the deadline and thus its appeal is untimely, unless the deadline was tolled, or unless there was a defect in the final decision that prejudiced Parsons. We find that neither of these exceptions apply.

Board and Federal Circuit precedent holds that the 90 day statute of limitations is jurisdictional. *Military Aircraft Parts*, ASBCA No. 60308, 17-1 BCA ¶ 36,680 at 178,609; *Cosmic Construction v. United States*, 697 F.2d 1389, 1390 (Fed. Cir. 1982). The Board's precedent holds that the Federal Circuit's holding in *Sikorsky Aircraft Corp. v. United States*, 773 F.3d 1315 (Fed. Cir. 2014) that the six-year statute of limitations[4] is subject to equitable tolling did not overturn prior Federal Circuit

---

[3] Parsons could have appealed to the United States Court of Federal Claims within one year of the final decision. 41 U.S.C. § 7104(b) (3). However, that deadline has also passed.

[4] The six-year statute of limitations is for submitting a claim to the contracting officer.

precedent, such as *Cosmic*, that the 90-day statute of limitations was jurisdictional. *Military Aircraft Parts*, 17-1 BCA ¶ 36,680 at 178,609. As Parsons did not file its appeal within 90 days of its receipt of the unilateral rate determination, its claim pertaining to the FY2011 lease costs is barred by the statute of limitations.

As noted in the facts above, the unilateral rate determinations did not include a notice of appeal rights. The government's failure to include the notice of appeal rights does not render an otherwise valid final decision invalid. *Alenia North America*, Inc., ASBCA No. 57935, 13 BCA ¶ 35,296 at 173,271 (citing *Placeway Construction Corp. v. United States*, 920 F.2d 903, 907 (Fed. Cir. 1990). The failure to include a notice of appeal rights does not prevent the start of the appeal period unless the contractor demonstrates that it was actually prejudiced by the lack of notice. *Decker & Co. v. West*, 76 F.3d 1573, 1580 (Fed. Cir. 1996) ("A contractor in Decker's position must demonstrate that [incorrect appeal advice] actually prejudiced its ability to prosecute its timely appeal before the limitation period will be held not to have begun."); *Mansoor Int'l Dev. Services*, ASBCA Nos. 59466 *et al.*, 16-1 BCA ¶ 36,376 at 177,337. Here, Parsons does not allege that it was actually prejudiced by the government's failure to include the notice of appeal rights.[5] Instead, Parsons attempts to distinguish the cited cases because they involved terminations for default pursuant to different FAR clauses, or defective rather than entirely missing appeal information (app. opp'n at 7-8). Our precedent is not limited to termination for default cases. Moreover, our decision in *Mansoor* notes that "[t]hree of the decisions at issue here lacked any mention of appeal rights" *Mansoor*, 16-1 BCA ¶ 36,376 at 177,337. Thus, we reject Parsons' attempt to distinguish these cases.

Parsons additionally alleges that the unilateral rate determination was not clearly final (app. opp'n at 8). We reject this argument also. The final decisions plainly announce that "it is my final determination that" (R4, tab 15 at G-538, tab 16 at G-543). The decisions clearly state that they are unilaterally determining the final indirect cost rates, and direct Parsons to submit adjustment vouchers (R4, tab 15 at G-542; tab 16 at G-548) ("you must submit adjustment vouchers if the rates unilaterally determined herein differ from the rates used for [Contractor Fiscal Year 2011] in your previous interim billings"). These adjustment vouchers are the last step in the process for reimbursing contractors for indirect costs. Parsons' argument that the unilateral rate

---

[5] The government asserts that Parsons appealed from unilateral rate determinations that were missing a notice of appeal rights in ASBCA Nos. 60218 and 61309. As this is a challenge to the Board's jurisdiction, we would be permitted to consider evidence beyond the pleadings; however, the government did not include copies of the relevant documents with its motion. The referenced information is not contained in our dispositions of those appeals, and we decline to take judicial notice of non-public information. Thus, we do not consider the government's unsubstantiated allegations.

determination was "not clearly final" (app. opp'n at 8) is contrary to the undisputed evidence.

Parsons further asserts that the additional lease costs first raised in its May 2018 letter were not considered by the government in the September 2018 unilateral rate determinations. According to Parsons, these costs were raised in its March 2019 certified claim, and thus, are properly before the Board. As explained above, we find that the unilateral rate determination is a final and unappealed government claim that precludes consideration of "new" costs in a later asserted contractor claim. However, even if Parsons were correct that it could raise a claim for new indirect costs after the establishment of the final indirect cost rates by the unilateral determination, Parsons' claim here would be barred by the six-year statute of limitations. Parsons' claim asserts a sum certain for FY2011 costs, but not for any later years. Thus, to be timely, Parsons' claim would have had to have been submitted by the end of 2017, but it was not submitted until March of 2019.

The six-year statute of limitations, unlike the 90-day statute of limitations for filing an appeal, is subject to equitable tolling; however, Parsons has not alleged any basis for why it was unable to file its claim within six years. Thus, we find that Parsons' claim for additional lease costs for FY2011, contained in its March 2019 claim, is barred by the statute of limitations.

### D. Parsons' March 2019 Claim Fails To State A Claim For Contract Interpretation

Parsons' certified claim also purportedly seeks contract interpretation of the FAR provision for allowability of contractor leaseback costs. The government moves to dismiss this portion of Parsons' appeal as a monetary claim that fails to state a sum certain (gov't mot. at 13-14). We hold that Parsons is asserting a monetary claim mischaracterized as a claim for contract interpretation. Parsons correctly cites Board precedent finding jurisdiction to entertain non-monetary claims for contract interpretation (app. opp'n at 9-13). However, the cases cited predate the Federal Circuit's decision in *Securiforce International America*, *LLC v. United States*, 879 F.3d 1354, 1360 (Fed. Cir. 2018). Securiforce did not change the jurisdiction of the Board to consider non-monetary claims. Instead, *Securiforce* clarified when a purported non-monetary CDA claim actually seeks monetary relief. In *Securiforce* the circuit explained that "[i]f 'the only significant consequence' of the declaratory relief sought 'would be that [the plaintiff] would obtain monetary damages from the federal government,' the claim is in essence a monetary one." *Securiforce*, 879 F.3d at 1360 (quoting *Brazos Elec. Power Coop., Inc. v. United States*, 144 F.3d 784, 787 (Fed. Cir. 1998)).

In *Garrett v. General Elec. Co.*, 987 F.2d 747 (Fed. Cir. 1993), the Federal Circuit held that the CDA provides jurisdiction to entertain nonmonetary claims for contract interpretation. In that case, the court held that, pursuant to that contract's inspection clause, the government had three options when it found that the contractor had not fulfilled the contract's requirements; it could have: 1) reduced the contract price by an equitable portion of the contract price; 2) demanded that the contractor repay an equitable portion of the contract price; or 3) directed the contractor to correct or replace the defective product. *General Electric*, 987 F.2d at 749. In *General Electric*, contract interpretation could relieve the contractor from its obligation to perform, and this would have been a "significant consequence" of the relief sought that was not monetary in nature. *(Id.)*

In *Securiforce*, the government issued a partial termination for convenience and then terminated the contractor for default. The contractor filed its initial complaint in the Court of Federal Claims to challenge the termination for default and then filed a claim with the contracting officer challenging the termination for convenience. *Securiforce*, 879 F.3d at 1358-59. Thus, at the time *Securiforce* filed its claim, it had already been terminated for default and it could not obtain any relief other than money damages because it was no longer performing on the contract.

Parsons cites to our holding, predating *Securiforce*, in *Greenland Contractors I/S*, ASBCA Nos. 61113, 61248, 18-1 BCA ¶ 36,942 at 179,973, for the proposition that that the Board can entertain a claim for contract interpretation. However, Parsons does not cite our subsequent holding in *Greenland Contractors I/S*, ASBCA Nos. 61113, 61248 19-1 BCA ¶ 37,259, applying facts not present in the initial decision, and determining that Greenland was, in fact, seeking to assert a monetary claim because it had already performed some of the work for which it sought an interpretation of contractual terms. We held that, because Greenland had already performed some of the work, there was no other significant consequence of a claim for contract interpretation, other than money damages. *Greenland*, 19-1 BCA ¶ 37,259 at 181,332.

In a similar (though not binding on us) case, the Civilian Board of Contract Appeals held in *Duke University v. Dept. of Health and Human Services*, CBCA No. 5992, 18-1 BCA ¶ 37,023, that the contractor had "already incurred costs associated with its contract interpretation dispute, and it could have quantified those costs and stated them in a sum certain in a claim to the contracting officer." *Duke*, 18-1 BCA ¶ 37,023 at 180,291. The Civilian Board explained that a "ruling in Duke's favor would not result in Duke avoiding costs, but instead would be used only to entitle Duke to monetary relief in a separate proceeding. In such circumstances, it is clear that Duke has an uncertified and unquantified monetary claim." *(Id.)* We find the Civilian Board's reasoning here to be persuasive.

7

Here Parsons asserts that it is seeking an interpretation of contract terms related to the "calculation of allowable rent costs pursuant to FAR 31.205-36(b) and FAR 31.205-16(b), as applicable to FY2011 and all subsequent fiscal years in which these costs have been and will be charged to the Government" (app. opp'n at 11) (emphasis omitted). However, the only "significant consequence" of Parsons' claim for contract interpretation would be the payment of money. The parent corporation, PC, signed a 15 year lease for the Pasadena Tower Building in 2011 and Parsons has continuously occupied space in the building (compl. ¶¶ 21-47). Thus, unlike the contractor in *General Electric*, Parsons will not be able to avoid performance of a contractual task by virtue of its claim for contractual interpretation. Parsons has already occupied the building pursuant to the lease for over eight years, and is obligated, by lease, to stay in the building until June 30, 2026. Thus, Parsons does not assert a valid non-monetary claim for contract interpretation.

Moreover, to the extent Parsons' claim for contractual interpretation for years after FY2011 could be interpreted as a claim for money damages, Parsons admits that its claim for years after FY2011 are only for contract interpretation (app. resp. at 10 ("Parsons' Claim . . . articulates a sum certain for the FY 2011 year while at the same time seeking a non-monetary claim for contract interpretation for future years.")). Thus, Parsons' appeal purporting to assert a non-monetary claim for contract interpretation is dismissed for lack of jurisdiction.

## CONCLUSION

For the reasons stated above, Parsons' appeal is dismissed for lack of jurisdiction. Parsons' August 29, 2019 motion for leave to file a first amended complaint is denied as moot.

Dated: April 15, 2020

DAVID D'ALESSANDRIS
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

8

I concur                                    I concur


RICHARD SHACKLEFORD                         J. REID PROUTY
Administrative Judge                        Administrative Judge
Acting Chairman                             Vice Chairman
Armed Services Board                        Armed Services Board
of Contract Appeals                         of Contract Appeals


     I certify that the foregoing is a true copy of the Opinion and Decision of the
Armed Services Board of Contract Appeals in ASBCA No. 62113, Appeal of
Parsons Government Services, Inc., rendered in conformance with the Board's
Charter.

     Dated:  April 15, 2020


PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals