ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
)
DynPort Vaccine Company LLC ) ASBCA No. 59298
)
Under Contract No. DAMD17-98-C-8024 )

APPEARANCE FOR THE APPELLANT: Carl J. Peckinpaugh, Esq.
   Counsel
   Computer Sciences Corporation
   Falls Church, VA

APPEARANCES FOR THE GOVERNMENT: Raymond M. Saunders, Esq.
   Army Chief Trial Attorney
   Kyle E. Chadwick, Esq.
   Trial Attorney

## OPINION BY ADMINISTRATIVE JUDGE JAMES ON THE GOVERNMENT'S MOTION TO DISMISS FOR LACK OF JURISDICTION

The contracting officer's (CO's) unilateral contract modification directed appellant to perform corrective or replacement work at no cost to the government pursuant to the contract's FAR 52.246-8, INSPECTION OF RESEARCH AND DEVELOPMENT – COST-REIMBURSEMENT (APR 1984) clause. Appellant appealed from the issuance of that modification. The government moves to dismiss the appeal for lack of jurisdiction under the Contract Disputes Act (CDA), 41 U.S.C. §§ 7101-7109, on the ground that such modification did not assert a government claim. Appellant opposed the motion and requested that the government file the first pleading. The government replied. We deny the motion and grant appellant's request.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. On 7 November 1997, the U.S. Army Medical Research Acquisition Activity, on behalf of the Department of Defense Joint Vaccine Acquisition Program, awarded Contract No. DAMD17-98-C-8024 (the contract), a cost-reimbursement, cost sharing, award fee research and development type contract to "DynPort, LLC"[1] for, *inter alia*, the development and licensure application of vaccines and other biological defense products (gov't mot., ex. G-1 at 1-3, 30[2]). Under contract line item number (CLIN) 0016, DVC was required, on a cost-plus-award-fee basis, to develop and test

---

[1] Modification No. P00354 was issued to DynPort Vaccine Company, LLC (DVC) (gov't mot., ex. G-2). DVC is a wholly-owned subsidiary of Computer Sciences Corporation (app. opp'n, ex. A, Pandey decl. (Pandey decl.) ¶ 1).

[2] Citations to pages in exhibits G-1, -3 and -4 are to their Bates numbers.

for FDA licensure application serotypes of a botulinum (BOT) vaccine (gov't mot. ¶ 1, ex. G-1 at 10-11; Pandey decl. ¶ 2).

2. The contract incorporates by reference the FAR 52.233-1, DISPUTES (OCT 1995) – ALTERNATE I (DEC 1991) clause, which provides, in pertinent part:

> (c) *Claim*, as used in this clause, means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to this contract....

> (d)(1) ...A claim by the Government against the Contractor shall be subject to a written decision by the Contracting Officer.

> ....

> (i) The Contractor shall proceed diligently with performance of this contract, pending final resolution of any request for relief, claim, appeal, or action arising under the contract, and comply with any decision of the Contracting Officer.

(Gov't mot., ex. G-1 at 61)

3. The contract also incorporated by reference the FAR 52.246-8, INSPECTION OF RESEARCH AND DEVELOPMENT – COST-REIMBURSEMENT (APR 1984) clause, which provides, in pertinent part:

> (f) At any time during contract performance, but no later than 6 months (or such other time as may be specified in the contract) after acceptance of all the end items (other than designs, drawings, or reports) to be delivered under the contract, the Government may require the Contractor to replace or correct work not meeting contract requirements. Time devoted to the replacement or correction of such work shall not be included in the computation of the above time period. Except as otherwise provided in paragraph (h) below, the cost of replacement or correction shall be determined as specified in the Allowable Cost and Payment clause, but no additional fee shall be paid. The Contractor shall not tender for acceptance work required to

2

be replaced or corrected without disclosing the former requirement for replacement or correction, and when required, shall disclose the corrective action taken.

(g) (1) If the Contractor fails to proceed with reasonable promptness to perform required replacement or correction the Government may–

(i) By contract or otherwise, perform the replacement or correction, charge to the Contractor any increased cost, or make an equitable reduction in any fixed fee paid or payable under the contract;

(ii) Require delivery of any undelivered articles and shall have the right to make an equitable reduction in any fixed fee paid or payable under the contract; or

(iii) Terminate the contract for default.

(2) Failure to agree on the amount of increased cost to be charged the Contractor or to the reduction in fixed fee shall be a dispute.

(h) Notwithstanding paragraphs (f) and (g) above, the Government may at any time require the Contractor to remedy by correction or replacement, without cost to the Government, any failure by the Contractor to comply with the requirements of this contract, if the failure is due to (1) fraud, lack of good faith, or willful misconduct on the part of the Contractor's managerial personnel or (2) the conduct of one or more of the Contractor's employees selected or retained by the Contractor after any of the Contractor's managerial personnel has reasonable grounds to believe that the employee is habitually careless or unqualified.

(Gov't mot., ex. G-1 at 37)

4. On 7 February 2012 bilateral Modification No. P00354 established a delivery date of July 2016 for the CLIN 0016 vaccines (gov't mot. ¶ 1, ex. G-2 at 3).

5. On 23 August 2013 DVC terminated for default its subcontractor, Lonza Hopkinton, Inc., for BOT antigens under CLIN 0016 (gov't mot. ¶ 3, ex. G-3 at 3; Pandey decl. ¶ 4).

3

6. DVC's 14 November 2013 letter to CO Lawrence Mize proposed a change order to add subcontractor FUJIFILM Diosynth Biotechnologies, U.S.A., LLC (FDBU) to complete CLIN 0016 BOT Antigen A and Antigen B manufacturing, testing and two technology transfer studies for $4,071,175 ($4,629,326.19 with DVC markup). DVC stated that such studies were required to complete manufacturing processes and testing of the vaccine product for licensure and readiness for commercial production due to the impact caused by the Lonza termination. DVC requested a contract modification incorporating the proposed new work on or before 13 December 2013. (Gov't mot., ex. G-3 at 1, 3-5, 10)

7. On 15 November 2013, when the parties met to discuss DVC's change proposal, the government told DVC that it did not believe DVC was entitled to reimbursement of its proposed technology transfer costs (gov't mot. ¶ 6, ex. G-4 at 1; Pandey decl. ¶ 6).

8. DVC's 26 November 2013 letter to CO Mize stated that DVC was entitled to an increase in the contract cost for the proposed studies, such cost was allowable and reimbursable, under the contract the government had previously reimbursed DVC for technology transfer costs for performance-related issues, the shutdown of Lonza's facilities was unknown and unpreventable, and DVC had expended its best efforts to meet contractual requirements (gov't mot., ex. G-4).

9. CO Mize's 20 January 2014 letter responded to DVC's 26 November 2013 letter and asserted that the government was not liable for increased costs due to DVC's "carelessness in its conduct of the work or the degree of its disregard of contractual duties" (gov't mot., ex. G-5, ¶ 1). The CO objected to reimbursing DVC for its proposed increased costs because previous technology transfers did not involve DVC's failure to undertake its best efforts to meet contractual duties, there were reasonable grounds for DVC's managerial personnel to believe DVC's employees were habitually careless, Lonza's deficient performance resulted from DVC's "gross disregard of [its] contractual duties" and DVC failed to acknowledge "any failure on its own part nor offered to re-perform at its expense or to reimburse the Government for failed performance" (id. ¶¶ 3, 5, 9, 11). The CO asked DVC to respond by letter either stating that it will not pay any amount for its alleged failures, or proposing an amount DVC considered appropriate under the circumstances (id. ¶ 12). The letter did not state that it was a CO's decision or advise DVC of its appeal rights.

10. DVC's 31 January 2014 letter denied the CO's 20 January 2014 allegations that DVC was in "gross disregard" of its contractual responsibilities and repeated that it was not liable for the proposed technology transfer costs. DVC argued that the CO could redress any performance issues or concerns he had through the contract's award fee provisions in the contract, rather than by denying DVC's incurred costs, and suggested that the government accept DVC's original proposal. (Gov't mot., ex. G-6)

4

11. On 21 February 2014, CO Mize issued unilateral Modification No. P00431 (Mod. P00431), citing FAR 52.246-8(h). Mod. P00431 incorporated DVC's 14 November 2013 proposed change order, directed DVC to proceed with the proposed work, but at no cost to the government "due to [DVC]'s willful managerial misconduct and/or habitual employee carelessness" and created government options to proceed with work at different stages in accordance with the proposed change order. (Gov't mot., ex. G-7)

12. DVC's 14 March 2014 letter notified CO Mize that it intended to seek an equitable adjustment for the technology transfer costs based on the work directed under Mod. No. P00431 pursuant to the Changes clause of the contract (FAR 52.243-2 (AUG 1987) – ALTERNATE V (APR 1984), which DVC stated was the authority for Mod. P00431 (gov't mot., ex. G-8).

13. By letter dated 23 April 2014, CO Mize exercised the Mod. P00431 option, and directed DVC to perform the optional work pursuant to FAR 52.246-8(h) at no cost to the government (gov't mot., ex. G-9). Neither Mod. P00431 nor the 23 April 2014 letter stated that it was a CO's decision or advised DVC of its appeal rights.

14. On 7 May 2014 DVC appealed to the Board from Mod. P00431 and the 23 April 2014 option exercise, asserted that such documents constituted a *de facto* CO's final decision, and requested the Board to direct the government to file the initial pleading under Board Rule 6 because the appeal was from a government claim.

15. On 5 June 2014, in response to the Board's 9 May 2014 direction to provide its views on DVC's request that the government file a pleading in the nature of a complaint, the government filed its motion to dismiss this appeal for lack of jurisdiction on the ground that Mod. P00431 did not assert a government claim.

## DECISION

### I.

The government argues that since Mod. P00431 was issued during contract performance and it has not accepted or rejected any contract deliverable, Mod. P00431 was an act of contract administration, not a government claim, citing *Hughes Aircraft Co., Electron Dynamics Division*, ASBCA No. 43877, 93-3 BCA ¶ 26,133 at 129,903 n.[*] (gov't mot. at 7, 10-11). DVC argues that it is not required to complete performance and submit its own claim in lieu of appealing the CO's unilateral direction, citing *Alliant Techsystems, Inc. v. United States*, 178 F.3d 1260, 1265-66 (Fed. Cir. 1999), and *Garrett v. General Electric Co.*, 987 F.2d 747 (Fed. Cir. 1983) (app. opp'n at 6-8).

5

*Hughes Aircraft* involved a $9,402,806 contractor claim for redesign and retesting of wave tubes. The jurisdictional issues decided were the adequacy of appellant's claim certification and whether such claim was in dispute when submitted.[3] 93-3 BCA ¶ 26,133 at 129,899. The Board's footnote, "Unlike the situation in *General Electric*...appellant here had not completed performance...when the government directed it to repair or replace the 46 wave tubes. Thus, that direction was within the ambit of ordinary contract administration, and not a 'claim' within our jurisdiction," 93-3 BCA ¶ 26,133 at 129,903, was *dictum,* and in any event does not stand for the proposition that contract performance must be completed for a direction to be considered outside the bounds of ordinary contract administration. It does not mandate the granting of this motion. *General Electric* addressed a Navy demand that GE repair defective engines at no cost after revocation of their final acceptance under one of the remedies provided for in the contract's Inspection clause. This appeal concerns a government order during contract performance for the contractor to perform change order work at no cost to the government due to alleged "willful managerial misconduct and/or habitual employee carelessness" pursuant to the Inspection of Research and Development--Cost Reimbursement clause, ¶ (h).

As the proponent of the Board's jurisdiction, DVC bears the burden of proof of such jurisdiction. *See Cedars-Sinai Medical Ctr. v. Watkins,* 11 F.3d 1573, 1584 (Fed. Cir. 1993) (invoking party has burden of proving facts sufficient to support jurisdiction). A prerequisite of the Board's exercise of jurisdiction over appeals of government claims under the CDA is a contracting officer's written decision asserting a claim against the contractor. 41 U.S.C. § 7103(a)(3). The term *"claim"* is not defined in the CDA. However, FAR 33.201 in November 1997 and paragraph (c) of the contract's Disputes clause defined the term as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to this contract" (SOF ¶ 2).

II.

We address first whether CO Mize's direction to DVC in Mod. P00431 or in his 23 April 2014 letter to DVC was a government claim in the context of the parties' pertinent communications. The absence of an express styling of a document as a CO's decision or of notice of the contractor's appeal rights, or of both, does not render a CO's decision ineffective or deprive the Board of jurisdiction. *See KAL M.E.I. Manufacturing & Trade Ltd.,* ASBCA Nos. 44367, 45531 *et al.,* 94-1 BCA ¶ 26,582 at 132,257-58 (Board had jurisdiction of ASBCA No. 45531 because government modification withholding $42,605.30 for a lost shipment constituted "a final decision

---

[3] *Hughes* was decided prior to the Federal Circuit's opinion in *Reflectone, Inc. v. Dalton,* 60 F.3d 1572 (Fed. Cir. 1995) (en banc).

6

on a government claim" notwithstanding that it was not designated a CO's decision and contained no advice of the contractor's appeal rights.).

In deciding the government's motion to dismiss we must consider all the facts and circumstances in the record to determine whether the CO's unilateral Mod. P00431 is an appealable decision. *See LTV Aerospace and Defense Co., Vought Missiles and Advanced Programs Division*, ASBCA No. 35674, 89-2 BCA ¶ 21,858 at 109,950 (in each case, the facts and circumstances surrounding how a claim arose and how a final decision came to be issued at the time must be analyzed. CO's unilateral modification reducing contract price was a government claim.).

From 14 November 2013 through 23 April 2014 the parties exchanged correspondence disputing whether DVC's proposed technology transfer work to be performed by subcontractor FDBU had to be performed at no cost to the government (SOF ¶¶ 6-13). CO Mize's unilateral Mod. P00431 directed DVC to perform the work specified in DVC's 14 November 2013 change proposal at no cost to the government pursuant to FAR 52.246-8(h) "due to [DVC's alleged] willful managerial misconduct and/or habitual employee carelessness," and his 23 April 2014 unilateral exercise of an option included in Mod. P00431 was to be at no cost to the government (SOF ¶¶ 11, 13). DVC disagreed that the conditions of 52.246-8(h) had been met, that the clause was applicable to the relevant circumstances and appealed from the CO's issuance of Mod. P00431 and the 23 April 2014 letter (SOF ¶ 14).

It is clear that "other relief" (*see* SOF ¶ 2) can include directions by the CO to the contractor to correct or replace work and be considered a government claim under circumstances where the Board is not being asked to take jurisdiction over ordinary contract administration actions. *General Electric*, 987 F.2d 747. We are persuaded under the circumstances present here, that Mod. P00431 asserted a government claim for "other relief" against DVC under the CDA for two reasons. First, the definition of "*claim*" is to be read broadly. *See Todd Construction, L.P. v. United States*, 656 F.3d 1306, 1311 (Fed. Cir. 2011). The government's argument would limit government nonmonetary claims to instances after acceptance of work or contract completion, contrary to the broad FAR definition of a claim. *See Alliant*, 178 F.3d at 1267 (court rejected the government's argument that the Disputes clause excluded nonmonetary claims filed before completion of performance because that "would render largely meaningless those portions of the definition of claim that refer to requests for nonmonetary relief"). Furthermore, such argument would improperly narrow the FAR 52.246-8(h) provision "the Government may *at any time* require the Contractor to remedy…without cost to the Government, any failure by the Contractor to comply with the [contract] requirements" (emphasis added) (SOF ¶ 3). Second, in mid-November 2013 the parties began to disagree about whether DVC was entitled to reimbursement for its proposed $4 million change order (SOF ¶¶ 6-8). Their disagreement continued until the CO directed DVC, by unilateral Mod. P00431 and his 23 April 2014 letter, to perform the change order work without cost to the government (SOF ¶¶ 11, 13). The

7

CO has ordered DVC to perform changed work in a cost-reimbursement contract without compensation pursuant to one of the remedies available to it in an Inspection clause in the contract which requires the CO to have found the contractor to have committed serious failures in performing the contract's requirements. This does not strike us as a dispute as to ordinary contract administration. In these circumstances, the CO's direction was a decision asserting a government claim. Since Mod. P00431 asserted a government claim, and DVC timely appealed, we hold that we have jurisdiction to entertain DVC's appeal.

III.

We turn to whether the government should file the initial pleading in this appeal. Since the CO is the only one that knows specifically what facts he relied on to determine that DVC had failed to perform the requirements of the contract such that FAR 52.246-8(h) was available to the government, and no explicit CO decision was issued, we determine that requiring the government to file a pleading in the nature of a complaint would facilitate the proceedings. *Beechcraft Defense Company*, ASBCA No. 59173, 14-1 BCA ¶ 35,592. It shall do so within 60 days from the date of this decision.

CONCLUSION

The government's motion is denied. The government shall file its complaint within 60 days from the date of this Opinion.

Dated: 15 January 2015

DAVID W. JAMES, JR
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 59298, Appeal of DynPort Vaccine Company LLC, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

9