# United States Court of Appeals for the Federal Circuit

---

**LOCKHEED MARTIN AERONAUTICS COMPANY,**
*Appellant*

**v.**

**SECRETARY OF THE AIR FORCE,**
*Appellee*

---

2022-1035

---

Appeal from the Armed Services Board of Contract Appeals in Nos. 62505, 62506, Administrative Judge J. Reid Prouty, Administrative Judge Brian S. Smith, Administrative Judge Craig S. Clarke, Administrative Judge James R. Sweet, Administrative Judge Richard Shackleford.

---

Decided: April 25, 2023

---

SKYE MATHIESON, Crowell & Moring, LLP, Washington, DC, argued for appellant. Also represented by STEPHEN JOHN MCBRADY.

AMANDA TANTUM, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for appellee. Also represented by BRIAN M. BOYNTON, PATRICIA M. MCCARTHY; CHRISTOPHER JUDGE HILBOR, JEFFREY PAUL HILDEBRANT, CARYL POTTER, III, Air Force Commercial Litigation Field Support Center, United

2          LOCKHEED MARTIN AERONAUTICS COMPANY v.
                           SECRETARY OF THE AIR FORCE

States Air Force, Joint Base Andrews, MD.

JASON NICHOLAS WORKMASTER, Miller & Chevalier Chartered, Washington, DC, for amicus curiae National Defense Industrial Association. Also represented by ALEJANDRO LUIS SARRIA.

————————————

Before REYNA, MAYER, and HUGHES, *Circuit Judges.*

REYNA, *Circuit Judge.*

To expedite work on pressing government projects, the government can issue what are called "letter contracts" or "Undefinitized Contract Actions" ("UCAs"). UCAs allow contractors to begin work before the parties have reached a final agreement on contract terms, like price. The price is expected to be converted into a firm price—or "definitized"—in a timely manner.

This appeal involves two UCAs that the Air Force entered into with Lockheed Martin for upgrades to F-16 aircraft. Both UCAs include "definitization" clauses that provide that if the parties are unable to reach agreement on price by a certain time, the Contracting Officer or "CO"—the government's agent who can negotiate, execute, modify, or terminate a contract on behalf of the government—may determine a reasonable price. After several years of negotiations, the Air Force and Lockheed Martin were unable to agree on the price terms for the UCAs. The CO assigned to each UCA unilaterally definitized their respective UCA at a price of about $1 billion.

Lockheed Martin appealed directly to the Armed Services Board of Contract Appeals ("ASBCA") under the Contract Disputes Act ("CDA"), asserting that the COs failed to definitize at a reasonable price as required under the UCAs. The government moved to dismiss, arguing that the ASBCA lacked jurisdiction over the appeals because Lockheed Martin failed to submit a certified contractor claim to

the COs requesting a final decision on its claims as required under the CDA. Lockheed Martin asserted that the COs' unilateral definitizations qualified as government claims under the CDA, which a contractor can directly appeal to the ASBCA without having to submit its own claim to the COs. The ASBCA disagreed with Lockheed Martin and dismissed the appeals for lack of jurisdiction.

Lockheed Martin appeals to this court, pressing the same "government claim" argument here. For the reasons below, we affirm the ASBCA's dismissal.

## BACKGROUND

### A.  The statutory and regulatory basis for UCAs

For much of the Nation's history—stretching back to the Revolutionary War—federal agencies relied on their own distinct procurement and acquisition rules. *See* Federal Acquisition Regulation for Government Contracts: Overview, Practical Law Practice Note Overview w-021-9160 (2023 Westlaw) ("Government Contracts Overview"). These rules were neither uniform nor transparent, creating an unpredictable procurement process. *Id.* So in the late 1970s, Congress amended the Office of Federal Procurement Policy Act ("OFPPA") to authorize the Administrator of the Office of Federal Procurement Policy to "issue policy directives . . . for the purpose of promoting the development and implementation of the uniform procurement system." Pub. L. No. 96-83, § 4(e), 93 Stat. 648 (1979). Under the OFPPA, "the Administrator may prescribe Government-wide procurement policies," which "shall be implemented in a single Government-wide procurement regulation called the Federal Acquisition Regulation." 41 U.S.C. § 1121(b).

The Federal Acquisition Regulation ("FAR")—48 C.F.R. § 1.101 *et seq.*—provides the implementing regulations for the OFPPA. The FAR applies to executive agencies (like the Department of Defense) and their components

or sub-agencies (like the Air Force).  *See* Government Contracts Overview.  The OFPPA also authorizes agencies to implement additional procurement regulations in order "to satisfy the specific and unique needs of the agency."  41 U.S.C. § 1303(a)(2).  The Department of Defense's additions to the FAR are set forth in the Defense Federal Acquisition Regulation Supplement ("DFARS"), 48 C.F.R. § 201.101 *et seq*.

Relevant here, the FAR and the DFARS contemplate the government entering into UCAs.  *See* 48 C.F.R. § 16.603; *id*. § 216.603.  The government does so when it needs a contractor to begin performing work right away on urgent projects.  *See* John Cibinic & Ralph C. Nash, *Unilateral Definitization of a Letter Contract: Whose Claim?*, 35 Nash & Cibinic Rep. NL ¶ 60 (2021).  "Because they allow work to be started without establishing a firm price, they are expected to be converted into firm contracts (definitized) in a timely manner."  *Id*.  As the DFARS explains, a "[c]ontract action means an action which results in a contract"; a UCA "means any contract action for which the contract terms, specifications, or price are not agreed upon before performance is begun under the action"; and "[d]efinitization means the agreement on, or determination of, contract terms, specifications, and price, which converts the undefinitized contract action to a definitive contract."  48 C.F.R. § 217.7401.  The specific process for definitization in government contracts is set forth in "Contract Definitization" clauses in 48 C.F.R. § 52.216-25 (FAR) and 48 C.F.R. § 252.217-7027 (DFARS).

### B.  The Air Force and Lockheed Martin UCAs

Around 2015 and 2016, the Air Force entered into two UCAs with Lockheed Martin for upgrades to F-16 aircraft: the 2015 Singapore contract (J.A. 56; J.A. 2013 ¶¶ 16–17); and the 2016 Korea contract (J.A. 1345; J.A. 2013–2014 ¶¶ 18–19).  The Singapore contract includes the FAR definitization clause and the Korea contract includes the

DFARS definitization clause. *See* J.A. 101, 48 C.F.R. § 52.216-25 (Singapore contract); J.A. 1388, 48 C.F.R. § 252.217-7027 (Korea contract).

For purposes of this appeal, the definitization clauses are identical in all material respects. Both require Lockheed Martin to "begin promptly negotiating with the [CO] the terms of a definitive contract that will include (1) all clauses required by the [FAR] on the date of execution of the letter contract, (2) all clauses required by law on the date of execution of the definitive contract, and (3) any other mutually agreeable clauses, terms, and conditions," and to submit a proposal including pricing data supporting its proposal. 48 C.F.R. § 52.216-25(a); *see also id.* § 252.217-7027(a).

The clauses further provide a "schedule for definitizing th[e] contract." *Id.* § 52.216-25(b); *see also id.* § 252.217-7027(b).

Subparagraph (c) then states:

If agreement on a definitive contract to supersede this letter contract is not reached by the target date in [the schedule] . . . the [CO] may, with the approval of the head of the contracting activity, determine a reasonable price or fee in accordance with subpart 15.4 and part 31 of the FAR, subject to Contractor appeal as provided in the Disputes clause.

*Id.* § 52.216-25(c); *see also id.* § 252.217-7027(c). Subparagraph (c) further states: "In any event, the Contractor shall proceed with completion of the contract." *Id.* § 52.216-25(c); *see also id.* § 252.217-7027(c).

After several years of offers and counteroffers, the parties were unable to agree on contract prices. Eventually, the COs definitized their respective UCAs at a price of roughly $1 billion. J.A. 639–640; J.A. 1673–1674.

Lockheed Martin contends that when the COs exercised their discretion to end negotiations and unilaterally establish a definitized contract price, they failed to comply with the definitization clauses' requirement to determine a "reasonable price" in accordance with subpart 15.4 and part 31 of the FAR. J.A. 2027–2030. Lockheed Martin appealed directly to the ASBCA, asking it to declare that the COs' definitizations were inconsistent with the regulations requiring a reasonable price and to remand to the COs, directing them to provide Lockheed Martin with reasonable prices. J.A. 2009–2032. Lockheed Martin brought its appeals before the ASBCA under the CDA.

## C. The CDA

Like the OFPPA amendments, the CDA was enacted during the government procurement reform of the late 1970s. Contract Disputes Act of 1978, Pub. L. No. 95-563, 92 Stat. 2383.[1] The CDA is designed "to provide a fair, balanced, and comprehensive statutory system of legal and administrative remedies in resolving government contract claims." *Winter v. FloorPro, Inc.*, 570 F.3d 1367, 1369 (Fed. Cir. 2009) (cleaned up). It recognizes two types of "claims": those brought by the government against a contractor (government claims) and those brought by a contractor against the government (contractor claims). *United States v. Am. States Ins. Co.*, 252 F.3d 1268, 1272 (11th Cir. 2001).

As for contractor claims, "[e]ach claim by a contractor against the Federal Government relating to a contract shall be submitted to the contracting officer for a decision"; shall "be in writing"; and, for claims of more than $100,000, shall be certified. 41 U.S.C. §§ 7103(a)(1)–(2), (b)(1). As for

---

[1] Initially codified at 41 U.S.C. §§ 601–613 (1982), Congress reorganized the CDA in 2011, and it is now found at 41 U.S.C. §§ 7101–7109 (2012). Act of Jan. 4, 2011, Pub. L. No. 111-350, § 2, 124 Stat. 3677, 3816–26.

government claims, "[e]ach claim by the Federal Government against a contractor relating to a contract shall be the subject of a written decision by the contracting officer." *Id.* § 7103(a)(3). Once the CO issues a final decision on a contractor claim, the contractor can then appeal to the appropriate board of contract appeals. *Id.* § 7104(a).[2] In contrast, a contractor may appeal a government claim directly to the appropriate board of contract appeals without submitting a contractor claim to the CO. *Garrett v. Gen. Elec. Co.*, 987 F.2d 747, 749 (Fed. Cir. 1993). In all events, for a board of contract appeals to have jurisdiction under the CDA, there must be a CO decision on a claim.

But it is not always clear whether a claim has been made and, if so, which party made it. John Cibinic, Jr. et al., Administration of Government Contracts 1182 (5th ed. 2016) ("In some cases it is difficult to distinguish between government and contractor claims."). The sole issue in this appeal is whether the COs' definitizations were government claims under the CDA.

### D. The ASBCA dismisses for lack of jurisdiction

In response to Lockheed Martin's appeals to the ASBCA, the government moved to dismiss for lack of jurisdiction, arguing that, because Lockheed Martin never submitted a written certified contractor claim to the COs requesting a final decision, there was no jurisdiction over its appeals. Appellee's Resp. Br. 6. And indeed, the record shows that, after the COs definitized the prices, Lockheed Martin did not challenge the definitizations before the COs or submit contractor claims under the CDA. In response to the government's motion, Lockheed Martin recognized that it needed a CO final decision for the ASBCA to have jurisdiction, but it argued that the CO's definitization decision

---

[2]    The contractor can also instead bring an action in the Court of Federal Claims. 41 U.S.C. § 7104(b).

was a final decision on a government claim against Lockheed Martin which may be directly appealed.  J.A. 4.

The ASBCA granted the government's motion and dismissed the appeals for lack of jurisdiction.  *Lockheed Martin Aeronautics Co.*, ASBCA Nos. 62505, 62506, 21-1 BCA ¶ 63 GC ¶ 215, 2021 WL 2912101 (J.A. 1–25).  In doing so, the ASBCA framed the issue as follows: "[W]hether a unilateral contract definitization action by a [CO] constitutes a government claim that may be directly appealed to the [ASBCA] by the contractor (as happened here), or whether it is an act of contract administration, subject to a claim by the contractor, but not a direct appeal."  J.A. 1.  The ASBCA majority concluded—over Administrative Judge Clarke's dissent—that it had already addressed this issue in *Bell Helicopter Textron*, ASBCA No. 35950, 88-2 BCA ¶ 20,656, 1988 WL 44376, *aff'd on mot. for recon.*, 88-3 BCA ¶ 21,048, 1988 WL 83993, and that it was bound by that decision.  *Id.* On grounds that the ASBCA must follow its own precedent, the majority held that "a unilateral contract definitization does not constitute a government claim and may not be directly appealed to" the ASBCA.  J.A. 2.  As in *Bell Helicopter*, it concluded, the "CO's decisions challenged here . . . established the contract price in accordance with the contracts' terms, and are thus not government claims."  J.A. 4.

Lockheed Martin appeals the dismissal to this court under 41 U.S.C. § 7107(a)(1)(A).  We have jurisdiction under 28 U.S.C. § 1295(a)(10).

## STANDARD OF REVIEW

We review the ASBCA's decisions on questions of law, including jurisdiction, de novo.  *Triple Canopy, Inc. v. Sec'y of Air Force*, 14 F.4th 1332, 1337–38 (Fed. Cir. 2021); *Placeway Constr. Corp. v. United States*, 920 F.2d 903, 906 (Fed. Cir. 1990).  Interpretation of a government contract and of applicable procurement regulations are questions of law subject to de novo review.  *Triple Canopy*, 14 F.4th at 1338.

## DISCUSSION

We hold that the COs' definitizations of the contracts here were not government claims and that, as a result, Lockheed Martin has not shown that the ASBCA erred in dismissing its appeals for lack of jurisdiction.

Although the classification of a claim as a government claim can affect jurisdiction and more,[3] the CDA offers minimal guidance on what constitutes one. Indeed, the "only guidance" that Congress has provided on the "definition of a government claim" comes from § 7103(a)(3), *Malone v. United States*, 849 F.2d 1441, 1443 (Fed. Cir. 1988), *modified*, 857 F.2d 787 (Fed. Cir. 1988),[4] which states: "Each claim by the Federal Government against a contractor relating to a contract shall be the subject of a

---

[3]    For instance, if a CO decision is considered a government claim, a dissatisfied contractor must appeal it to the appropriate board of contract appeals within the CDA's 90-day window or bring an action on it in the Court of Federal Claims within the 12-month window. 41 U.S.C. §§ 7104(a) & (b). By contrast, a contractor generally has six years to decide whether to submit a contractor claim to the CO. *Id.* § 7103(a)(4)(A). The classification of the claim can also play a role in determining which party bears the burden of proof on the merits of the claim. *See Lisbon Contractors, Inc. v. United States*, 828 F.2d 759, 763–64 (Fed. Cir. 1987) (relying on the board of contract appeals' practice of treating termination for default as a government claim to hold that the government bears the burden to prove default).

[4]    The *Malone* court analyzed the language under § 7103(a)'s predecessor, § 605(a), which, for our purposes here, is nearly identical to § 7103(a)'s language.

written decision by the contracting officer," 41 U.S.C. § 7103(a)(3).

Because the CDA does not specifically define the term "claim," "this court looks for guidance to its implementing regulations." *H.L. Smith, Inc. v. Dalton*, 49 F.3d 1563, 1564 (Fed. Cir. 1995); *see also Garrett*, 987 F.2d at 749. The FAR—the "applicable regulation," *Garrett*, 987 F.2d at 749—defines a "claim" as a "written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to this contract." 48 C.F.R. § 2.101; *see also id.* § 52.233-1(c) (government contract disputes clause defining a claim). We have held that "the phrase 'as a matter of right' in the regulatory definition of a 'claim' requires . . . that the [party] specifically assert entitlement to the relief sought"—"[t]hat is, the claim must be a demand for something due or believed to be due." *Alliant Techsystems, Inc. v. United States*, 178 F.3d 1260, 1265 (Fed. Cir. 1999); *see also Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1576 (Fed. Cir. 1995) (en banc) (explaining that "the FAR requires a 'claim' to be a written demand seeking a sum certain (or other contract relief) as a matter of right," which "is consistent with the ordinary meaning of the term 'claim': 'a demand for something due or believed to be due'" (citation omitted)).

We hold that the COs' decisions to definitize the contract prices here were not government claims because they were not demands or assertions by the government seeking relief against Lockheed Martin. When the COs definitized the contract prices, they were simply following the agreed upon procedures for determining the final contract price. *See* 48 C.F.R. § 52.216-25(c); *id.* § 252.217-7027(c). The COs were not making a demand or an assertion seeking entitlement to "something due or believed to be due." *Alliant*, 178 F.3d at 1265. Nor did the completion of the

definitization process result in the government seeking re-lief against Lockheed Martin.

That the COs' definitizations were not government claims becomes even more clear when we compare the COs' definitizations of the contract prices here to the COs' actions in cases in which we have found government claims. In *Garrett*, for instance, the Navy contracted for jet engines and accepted them. 987 F.2d at 748. The Navy later determined that there were defects in the engines, and the CO issued a decision revoking acceptance and directing GE to correct the defects at no cost to the government. *Id.* at 748–49. GE appealed to the ASBCA, which determined that it had jurisdiction. On appeal to this court, we analyzed whether the Navy's directives under the contract's inspection clause were appealable CDA claims. *Id.* at 749. We determined that the inspection clause of the contract gave the government the right to seek certain remedies. *Id.* The government opted to pursue a non-monetary remedy—directing the contractor to correct or replace the defective engines—which we held to be non-monetary "other relief" within the FAR's third category of "claims." *Id.* Because the government had directed GE to provide that relief, it had asserted a government claim. *Id.* The CO's decision thus amounted to a demand targeted at GE seeking to have GE correct or replace allegedly defective engines at no cost to the government.

In *Placeway*, the Coast Guard contracted with Place-way to build residential housing. 920 F.2d at 905. "The CO decided that the contract price balance due would not be 'released' because Placeway had failed to complete the contract 'in a timely manner[.]'" *Id.* We held that the CO's decision was a government claim. *Id.* at 906. Specifically, we "characterized" the government claim as a claim directed at Placeway "seeking incidental and consequential damages for Placeway's alleged breach of the contract, in particular, failure to complete performance on the date set in the contract." *Id.* at 906 n.1.

And in *Malone*, the Air Force awarded Malone a contract to paint and refurbish houses. 849 F.2d at 1442. After disputes arose over Malone's performance, the CO terminated the contract for default. *Id.* at 1443. Malone appealed directly to the ASBCA. *Id.* On appeal to this court, we rejected the government's argument that the ASBCA lacked jurisdiction. *Id.* at 1443–44. We explained that case law supported that a government decision to terminate a contractor for default is a government claim. *Id.* at 1443. That "position," we explained, followed directly from the CDA's language: "The government issues [the default termination] by CO decision, and it is both adverse to the contractor and relates to the contract because it involves a determination that the contractor has failed to fulfill its contractual duties." *Id.* And as one of the cases that the *Malone* court relied on explained, *id.*, a CO's default termination amounts to an "assertion" directed at a contractor seeking "to stop the contractor's performance of the contract," *Reedom*, ASBCA No. 30226, 85-1 B.C.A. (CCH) ¶ 17879, 1985 WL 16514 (describing default terminations).

Simply stated, the COs' actions in *Garrett*, *Placeway*, and *Malone* clearly amounted to a demand or an assertion seeking relief against the contractor based on the contractor's performance under the contract. The COs' definitizations here, by contrast, do not amount to demands or assertions seeking relief against Lockheed Martin based on Lockheed Martin's performance under the contract. Rather, as the ASBCA aptly characterized the definitization action in *Bell Helicopter*: The COs here "did no more than establish the contract price in accordance with the terms of" the definitization clauses and "merely perform[ed] the duty prescribed by the contract when the parties failed to reach agreement on a price." 88-2 BCA at ¶ 20,656.

Lockheed Martin's various attempts to characterize the COs' definitizations as demands or assertions that seek relief are unpersuasive. According to Lockheed Martin, by inserting new prices into the contracts, the COs made an

"adjustment" "of contract terms" within the FAR's second category of "claims." Appellant's Reply Br. 12. But even assuming that the COs' actions were demands or assertions against Lockheed Martin, we do not think that the COs' *establishment* of prices where none existed before can be legitimately characterized as an adjustment of contract terms.

Lockheed Martin also argues that, by unilaterally definitizing the prices, the government sought "other relief" within the FAR's third category of "claims" in the form of "impos[ing] prices and demand[ing] performance." Appellant's Reply Br. 12–13. But the COs' "imposing prices" is permitted under the definitization clauses and cannot be characterized as the government seeking something due or believed to be due from Lockheed Martin. Nor do we think that the COs' definitizations can be accurately construed as a "demand" seeking something due in the form of "performance." Indeed, the government had no reason to make that demand: The definitization clauses themselves expressly require Lockheed Martin to "proceed with completion of the contract" after the COs definitize the price, 48 C.F.R. § 52.216-25(c); *id.* § 252.217-7027(c), and Lockheed Martin did not suggest that it would refuse to do so.

Only one party here is making a demand or an assertion seeking relief: Lockheed Martin. Lockheed Martin asserts that the government failed to set a "reasonable price" as required by the contracts and seeks relief against the government—namely, that the COs comply with the definitization clauses and set a reasonable price. J.A. 2028, 2030. And Lockheed Martin can seek that relief by submitting a traditional contractor claim.[5]

---

[5]    Lockheed Martin reveals in its Opening Brief that it has already "submitted certified [contractor] claims to the Air Force regarding these two contracts." Appellant's

That, in fact, is precisely what the contractors did in two cases Lockheed Martin relies on in support of its "government claims" position—*Todd Construction, L.P. v. United States*, 656 F.3d 1306 (Fed. Cir. 2011), and *Alliant*, 178 F.3d 1260.  In those cases, we did not treat the government's underlying actions as government claims; we treated the contractor's *responses* to the government's actions as *contractor* claims.  *See Todd Constr.*, 656 F.3d at 1311 (explaining that the dispute was whether *Todd*'s requested relief in response to the government's performance evaluations "'relat[ed] to the contract'" and was thus a "'claim' under the CDA"); *Alliant*, 178 F.3d at 1265 (explaining that *Alliant*'s letter to the CO was "a written demand seeking adjustment or interpretation of a contract term").  Similarly, here, the COs' definitizations are not government claims.  Rather, Lockheed Martin's responses to the COs' definitizations are potentially contractor claims.

Finally, we disagree with Lockheed Martin that the phrase "subject to Contractor appeal" in the definitization clauses means that the definitizations in this case are government claims.  Appellant's Br. 26–29.  The definitization clauses state that "the [CO] may . . . determine a reasonable price . . ., *subject to Contractor appeal* as provided in the Disputes clause."   48 C.F.R. § 52.216-25(c) (emphasis added).  According to Lockheed Martin, "subject to Contractor appeal" must mean that the UCAs contemplate the existence of an underlying government claim that can be directly appealed.  After all, Lockheed Martin says, you cannot have an "appeal" without an underlying "claim."

Br. 39 n.25.  Its counsel confirmed this at oral argument, explaining that Lockheed Martin has submitted contractor claims to the COs; that the COs have denied those claims; and that those claims have been appealed to the ASBCA.  *See* Oral Arg. at 0:43–2:03.

But even if "appeal" necessarily meant that there was an underlying "claim," as Lockheed Martin contends, Lockheed Martin's argument would fail. That is because it is based on a flawed premise: that the underlying claim would be a *government* claim. If anything, the underlying claims on which the COs made their definitization decisions here would be *contractor*—not government—claims (for example, a Lockheed Martin demand for more money). *Cf. James M. Ellett Constr. Co. v. United States*, 93 F.3d 1537, 1544–45 (Fed. Cir. 1996) (analyzing the applicable FAR clause's statement that the contractor has a "right of appeal" from a CO's unilateral decision and determining that there was an appealable CO decision on a *contractor* claim). The phrase "subject to Contractor appeal" in the definitization clauses thus does not support Lockheed Martin's assertion that the definitizations are government claims.

We have considered Lockheed Martin's other arguments and find them unpersuasive.

## CONCLUSION

We hold that the COs' definitizations of the contract prices were not government claims because they were not demands or assertions by the government seeking relief against Lockheed Martin. We therefore affirm the ASBCA's judgment dismissing Lockheed Martin's appeals for lack of jurisdiction.

## **AFFIRMED**

### COSTS

No costs.