ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| The Sithe Group, LLC, dba TSG Industries | ) ASBCA No. 63605 |
| | ) |
| Under Contract No. W9126G-18-P-0012 | ) |

APPEARANCES FOR THE APPELLANT:     Thomas Dunlap, Esq.
                                   Alexander Jonathan Brittin, Jr., Esq.
                                     Dunlap Bennett & Ludwig PLLC
                                     Vienna, VA

APPEARANCES FOR THE GOVERNMENT:    Michael P. Goodman, Esq.
                                     Engineer Chief Trial Attorney
                                   Erin Zetterstrom, Esq.
                                     Engineer Trial Attorney
                                     U.S. Army Engineer District, Galveston

OPINION BY ADMINISTRATIVE JUDGE WILSON
ON THE GOVERNMENT'S MOTION TO DISMISS

The Board, sua sponte, questioned whether it has jurisdiction over this appeal. The United States Army Corps of Engineers (USACE or government) subsequently moved to dismiss this appeal for lack of jurisdiction, contending that The Sithe Group, LLC, dba TSG Industries (TSG) failed to file a timely appeal from the contracting officer's final decision (COFD) pursuant to the 90-day limitations period in the Contract Disputes Act, 41 U.S.C. § 7104 (CDA). For the reasons stated below, we grant USACE's motion and dismiss the appeal.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. On November 26, 2017, USACE awarded Contract No. W9126G-18-P-0012 to TSG for site preparation, installation, and purchase or lease of modular buildings to provide classrooms, an office trailer, and a restroom for the Orangefield Elementary School in Orangefield, Texas (gov't reply at 2, ex. 4 at 48).

2. TSG alleges that, on or about June 14, 2018, TSG substantially completed performance under the contract, (app. resp. at 1; gov't reply at 2 and ex. 1).

3. On June 18, 2018, TSG executed an assignment of payment on the contract to SouthStar Financial, LLC (SouthStar) (gov't reply at 2 and ex. 2).

4. On or around July 1, 2018, TSG submitted a request for equitable adjustment (REA) to USACE requesting $1,087,852.97 for unpaid contract funds, additional costs incurred, damages, and lost profits. TSG claimed that these costs were the result of USACE adding work beyond what was originally specified in the contract, providing faulty design specifications, and causing schedule delays. (Gov't reply at 2 and ex. 3; app. resp. at 1) On July 13, 2018, citing the remaining punch list work, USACE advised TSG that it was 163 calendar days beyond the January 31, 2018 contract completion date and had incurred over $400,000 in liquidated damages (gov't reply at ex. 1 at 2).

5. On August 23, 2018, TSG and USACE held an REA settlement conference. After several months of correspondence, TSG and USACE accepted, in principle, a USACE provided settlement offer on November 2, 2018. (Gov't reply, ex. 4 at 48; app. resp. at 2) According to a contracting officer's memorandum, for the next several weeks, TSG and USACE attempted to negotiate the final language to their settlement agreement, but on November 29, 2018, TSG withdrew from the settlement negotiations. After TSG's withdrawal, USACE committed to provide a response to the REA on the merits by December 21, 2018. (Gov't reply, ex. 4 at 48)

6. On December 20, 2018, USACE issued a "Memorandum for the File" which responded to TSG's REA; the decision approved TSG's request in small part and denied the remainder (gov't reply, ex. 4; app. resp., ex. 3). The contracting officer determined that TSG was entitled to an additional nine days of contract duration due to weather delays and an increase in the contract price of $6,075 to account for additional concrete aggregate. The decision noted that these adjustments would be considered "in connection with the assessment of liquidated damages" and work TSG did not complete. The remaining items in the REA were otherwise denied. (Gov't reply at 2 n.2 and ex. 4 at 48; app. resp. at 3-4, ex. 3)

7. On December 20, 2018, the contracting officer executed a unilateral modification to the contract (P00003) which adjusted the contract by incorporating the approved REA entitlement ($6,075 and a 9-calendar day extension), assessed liquidated damages of 157 calendar days totaling $390,705.49, and reduced the contract price by $1,600 for nonconforming supplies or services (gov't reply at 2-3 and ex. 5 at 56; app. resp. at 3-4).

8. Around January and February of 2019, a series of email correspondence occurred between Mr. Theodore Sims, the managing partner of TSG, and USACE (app. resp., ex. 5). In an email dated February 8, 2019, Mr. Jeffrey Neill, the Galveston District Chief of Contracting, replied to TSG's payment request and stated that the remaining balance could not be paid due to a defective invoice submitted by TSG and that TSG needed to submit an ENG 93 form (i.e., a payment estimate for contract performance form) and supporting information for the final payment to be

processed (app. resp. at 5-6 and ex. 5 at 39). In a second email dated February 12, 2019, Mr. Neill provided additional information about what constituted an acceptable invoice and further stated, "since this is the final payment, you will need to include a release of claims with any exclusions identified therein (e.g., you probably want to exclude the issues in your former REA)." Mr. Neill stated he attached a sample release statement for TSG's convenience. (App. resp. at 6 and ex. 5 at 36) On August 27, 2019, Mr. Sims submitted an ENG 93 form to USACE (app. resp. at 6 and ex. 6).

9. According to a declaration submitted by Mr. Sims, he believed that "USACE would not provide a final payment for the remaining balance of the Contract until a final settlement agreement was reached and TSG executed a release of claims" (app. resp. at 7 and ex. 8 at 50).

10. On December 19, 2019, TSG submitted its first certified claim to Mr. Curtis Cole, the USACE contracting officer, for $1,780,428.76 which incorporated TSG's denied REA claims and disputed the assessment of liquidated damages, alleging the government caused the delays (gov't reply at 3 and ex. 7; app. resp. at 7). The certified claim also contained the statement, "the USACE stated that remaining payment under the Contract could not be made unless TSG executed a release of claims. The Contract provides no such requirement." (Gov't reply, ex. 7 at 70). The contracting officer sent TSG an acknowledgement of receipt of the claim by email on December 31, 2019, and indicated that a COFD would be issued by February 24, 2020 (gov't reply at 3 and ex. 8).

11. By email dated January 6, 2020, Mr. Sims provided a copy of the certified claim to Colonel Robert Miceli, USACE Deputy Director of Contracting, and requested that he review and acknowledge receipt of the certified claim. By email and letter dated January 7, 2020, Mr. David Curry, the acting Senior Contracting Official at Dallas, responded to TSG on Colonel Miceli's behalf by acknowledging that the contracting officer was in receipt of TSG's claim and informed Mr. Sims that a COFD would be issued by February 24, 2020. Mr. Curry further advised Mr. Sims that Mr. Cole was the contracting officer and that if he had any further questions, he could contact Mr. Cole. (Gov't reply at 3 and ex. 9, attach. 1)

12. Following the February 12, 2019, email and TSG's submission of its certified claim, Mr. Neill states, by affidavit, that he had telephonic discussions with Mr. Sims in which he advised TSG that a release of claims was not required for an invoice to be paid (gov't reply at 3-4 n.5 and ex. 12 at 98).[1]

---

[1] In his affidavit, Mr. Neill states he informed Mr. Sims that he could also include any exclusions within the release of claims so that TSG could later submit an REA or claim (gov't reply, ex. 12 at 98).

13. By email and letter dated April 2, 2020, TSG sent a revised certified claim to USACE seeking $1,695,718.55 (gov't reply at 3 and ex. 11; app. resp. at 7). The revised claim included the statement, "USACE has asserted that it cannot pay TSG under the Contract until full completion and/or until TSG executes a release of claims. But contrary to the USACE's representation, the Contract contains no such clause or requirement" (gov't reply at 3 and ex. 11 at 91). In the claim, TSG again asserted that USACE breached the contract by failing to make payment, changed the contract terms by adding work beyond the contract specifications, and caused delays to the approved schedule; TSG also demanded that USACE forgo liquidated damages (gov't reply, ex. 11 at 91).

14. By email dated April 27, 2020, TSG submitted a final revised certified claim to USACE seeking $1,706,038.55 which included an updated claim summary (gov't reply at 4 and ex. 14). The revised claim included the statement, "[t]he USACE has asserted that it cannot pay TSG under the Contract until full completion and/or until TSG executes a release of claims" (gov't reply, ex. 14, attach. 1 at 12).

15. By email and certified mail dated July 29, 2020, the contracting officer, Mr. Cole, issued a COFD to TSG which accepted in part and denied in part TSG's certified claim (gov't reply at 4; gov't mot., ex. 1 at 7 and attach.; app resp. at 7). The COFD approved payment of $8,657.48 due to an improperly rejected invoice, but otherwise denied the claim (gov't reply at 4 n.6; gov't mot., ex. 1, attach). The COFD failed to include the FAR 33.211(a)(4)(v) appeal rights language (gov't mot., ex. 1, attach.).

16. Following his receipt of the COFD, by email dated July 29, 2020 at 11:43 a.m., Mr. Sims provided Mr. Curry a copy of the COFD and asked, "[p]lease advise" (gov't reply at 4 and ex. 16 at 108; app. resp. at 7). By email on that same day at 2:39 p.m., after receiving Mr. Sims' email, Mr. Curry contacted Mr. Neill, the Galveston District Chief of Contracting, and inquired about the risk for not including the FAR 33.211(a)(4)(v) appeal rights language (gov't reply at 4 and ex. 17 at 112). By email dated July 29, 2020 at 2:52 p.m., Mr. Neill replied to Mr. Curry and stated that the COFD would be updated and resent on that same day (gov't reply at 4 and ex. 17 at 111-12). By email dated July 29, 2020 at 2:57 p.m., Mr. Curry responded back to Mr. Sims and explained that the Chief of the Contracting Office and procurement contracting officer would be in touch with him shortly to discuss the path forward and his options (gov't reply at 4 and ex. 16 at 108).

17. In a declaration, Mr. Sims states that on July 29, 2020, the same day he received the COFD, he contacted Mr. Curry. Mr. Sims, however, did not identify the method of contact (e.g., email or phone). (App. resp. at 7 and ex. 8 at 50) Mr. Sims states that he told Mr. Curry, "it was my understanding that the parties were still negotiating the REA settlement and that the final decision should not be viewed as final" (*id.* app. resp. at 7 and ex. 8 at 50). Mr. Sims alleges that Mr. Curry responded

by stating that "in his experience these types of issues happen and the average time to reach a settlement is 3-5 years" (*id.* app. resp. at 7 and ex. 8 at 50). Mr. Sims further claims that this conversation with Mr. Curry led him "to believe that the [contracting officer's] decision was not truly final because the government was planning to revisit denied portion(s) of the claim by re-engaging in final settlement negotiations" (app. resp. at 7 and ex. 8 at 50-51).

18. USACE, however, disputes Mr. Sims' claims. In an affidavit, Mr. Curry states that he has no recollection of such a conversation taking place with Mr. Sims and further indicated that he would not make the statement that in his "experience these types of issues happen and the average time to reach a settlement is 3-5 years." (Gov't reply, ex. 31 at 174) USACE also indicated that its Cyber Forensics team conducted a search of Mr. Curry's emails from January 2020 to December 2020 using certain key words and the latest email communication recovered that occurred between Mr. Curry and Mr. Sims was the July 29, 2020 email exchange discussed above (gov't reply at 4 n.8).

19. On July 29, 2020 at 4:37 p.m., the contracting officer submitted a revised COFD to TSG by email and certified mail, return receipt requested (gov't reply at 4-5; gov't mot. at 1-2 and ex. 3; app resp. at 7). The return receipts indicated that TSG[2] received the COFD by email on July 29, 2020 at 5:14 p.m. and by certified mail on August 6, 2020 at 1:37 p.m. (gov't mot. at 2 and ex. 6, ex. 7; gov't reply at 5). TSG does not dispute these facts (*see* app. reply at 7, 11). As in the initial COFD, the contracting officer approved TSG's failure to make payment claim of $8,657.48 but otherwise denied all remaining claims. (Gov't mot., ex. 3; gov't reply at 4-5) Neither the original nor the revised COFD specifically assessed liquidated damages but, citing the Liquidated Damages clause, the contracting officer denied TSG's allegation that USACE waived the deadline for performance (gov't mot., ex. 3, attach. at 13). In addition, the COFD set forth the following, which includes the FAR 33.211(a)(4)(v) appeals right language:

> *This is the final decision of the Contracting Officer.* You may appeal this decision to the agency board of contract appeals. If you decide to appeal, you must, *within 90 days* from the date you receive this decision, mail or otherwise furnish written notice to the agency board of contract appeals . . .

(Gov't mot., ex. 3, attach. at 13; gov't reply at 4-5) (emphasis added)

---

[2] The record shows a return receipt for an email to an attorney that USACE states was TSG's attorney at the time it submitted the certified claim (gov't mot. at 4).

20.  TSG has not cited any evidence that the contracting officer reconsidered his final decision during the remainder of 2020, nor in 2021 or 2022.  Based on the documents submitted by the parties, there is no evidence that anything happened in 2020 after August 6, or in 2021 or 2022.

21.  On March 28, 2023, the contracting officer issued a revised unilateral Modification No. P00003, which referred to the July 29, 2020 COFD, and authorized the payment of $9,619.55, the remaining amount owed under the contract as referenced in the COFD ($8,657.48) plus interest to date, to appellant's assignee, SouthStar (gov't reply at 5 and ex. 24; app. resp. at 7-8).  That same day, the contracting specialist emailed the revised modification to TSG (gov't reply ex. 25; app. resp. at 8)  The modification did not include any language regarding the assessment of liquidated damages (*see* gov't reply, ex. 24 at 142-46).

22.  By email dated April 17, 2023, the contracting officer requested that Mr. Sims submit the final invoice (gov't reply at 6 and ex. 26 at 154-55; app. resp. at 8).  By email dated April 28, 2023, the contracting specialist followed up with Mr. Sims and further requested that an invoice be provided so that a payment could be made to SouthStar (gov't reply, ex. 27 at 154).

23.  That same day, Mr. Sims responded to the contracting specialist and inquired why USACE was withholding the remaining balance of the base contract "($650k+)" (gov't reply, ex. 27 at 153; app. resp. at 8).

24.  Later that day, the contracting officer responded via email and provided Mr. Sims with a breakdown of the payments made by the government under the contract.  The contracting officer then explained that the final amount owed under the contract was $9,619.55 to TSG's assignee, the amount identified in the COFD plus interest, and further inquired when TSG would provide an invoice for $8,657.48 so a final payment could be processed.  (Gov't reply at 6 and ex. 27 at 152; app. resp. at 9)

25.  In response, by email dated April 28, 2023, Mr. Sims once again asked the contracting officer about the remaining funds that he contended were owed to TSG for the accepted completion of the contract (gov't reply at 6 and ex. 28 at 157; app. resp. at 9).

26.  On May 2, 2023, TSG submitted a notice of appeal to this Board for the July 29, 2020 COFD.

27.  By email dated May 9, 2023, the contracting officer again explained to Mr. Sims that the final amount owed to TSG under the contract was "$8,657.78 plus interest based on TSG's April 2, 2020 certified claim for failure to make payment under progress payment request #002. . . ."  The contracting officer then inquired when

6

TSG would submit a final invoice so the amount owed could be submitted for payment. (Gov't reply at 6 and ex. 29; app. resp. at 9-10)  Based on the record, at no time within the 90 days after the revised COFD was issued, or at any time after the COFD was issued, did the contracting officer give an indication that he was reconsidering his final decision on TSG's claim.

28.  On May 10, 2023, the Board, sua sponte, questioned whether it had jurisdiction over this appeal.

29.  On May 30, 2023, USACE submitted a motion to dismiss for lack of jurisdiction due to untimeliness.  TSG has responded in opposition to the government's motion.

DECISION

USACE moves to dismiss this appeal for lack of jurisdiction, asserting that TSG failed to file its appeal within the requisite 90-day time period (gov't mot. at 2-5).  In support of its motion, USACE argues that the 90-day window began on July 29, 2020, when appellant's counsel received the COFD via email and USACE received a read receipt (gov't mot. at 4).  In the alternative, the government argues TSG received the COFD at the latest on August 6, 2020, when appellant received the COFD via certified mail (*id.* at 4-5).  As TSG filed its notice of appeal on May 2, 2023, USACE argues the appeal is long outside the 90-day time period (*id.* at 2, 5).

In its response, TSG argues that its appeal is not untimely because the COFD was not actually final since TSG was misled to believe that USACE would revisit the denied portions of its claim through settlement negotiations (app. resp. at 10-12).  Alternatively, TSG contends that even if we do find that the May 2, 2023 appeal was untimely, USACE's contract modification on March 28, 2023 qualified as a government claim which superseded the COFD and, therefore, TSG has timely appealed (*id.* at 12-13).  Finally, TSG argues that, at the very least, the Board should deny USACE's motion to dismiss because USACE's conduct following the COFD warrants investigation by the Board (*id.* at 13-14).

*TSG's Receipt of the COFD Initiated the 90-day Window*

The Board's jurisdiction is governed by the CDA, which requires that each claim by a contractor be submitted to the contracting officer for a final decision. 41 U.S.C. § 7103(a)(1).  The contractor may appeal a COFD to an agency board if the appeal is initiated within 90 days of the receipt date of the decision.  41 U.S.C. § 7104(a).  It is well established that the 90-day window is statutory and cannot be waived or extended.  *Cosmic Constr. Co. v. United States*, 697 F.2d 1389, 1390-91 (Fed. Cir. 1982).  Therefore, the Board lacks jurisdiction for any appeal that is

7

untimely filed outside the 90-day period. *Id*.; *Carter Safety Consultants, Inc.*, ASBCA No. 60779, 17-1 BCA ¶ 36,669 at 178,553.

While the appellant has the burden of proof to establish that its appeal was timely filed, the government has the burden of proving the date appellant received the final decision. *TTF, LLC,* ASBCA No. 59511 *et al.*, 15-1 BCA ¶ 35,883 at 175,434. According to the Federal Acquisition Regulation (FAR), "[t]he contracting officer shall furnish a copy of the decision to the contractor by certified mail, return receipt requested, or by any other method that provides evidence of receipt." FAR 33.211(b), CONTRACTING OFFICER'S DECISION (2023). To meet its burden, the government must provide "objective indicia" of actual physical receipt of the decision by the appellant to establish the proper receipt date and start the 90-day window. *Riley & Ephriam Constr. Co. v. United States*, 408 F.3d 1369, 1372 (Fed. Cir. 2005) (citing *Borough of Alpine v. United States*, 923 F.2d 170, 172 (Fed. Cir. 1991)).

In this case, USACE sent the COFD via email and certified mail. Here, USACE has provided evidence, via an email return receipt, that TSG (through counsel) received the COFD on July 29, 2020 (SOF ¶ 19). TSG has also not denied receiving the COFD on this date (*id.*). Therefore, USACE has met the requirements of FAR 33.211(b) by providing "objective indicia" of actual physical receipt of the COFD by TSG. *Riley*, 408 F.3d at 1372. Additionally, the COFD contained the required FAR 33.211(a)(4)(v) appeal rights language which notified TSG that they must appeal the decision "within 90 days from the date [the decision is received]" (SOF ¶ 19). Thus, the 90-day window started on July 29, 2020 and TSG was required to file its appeal by October 27, 2020.

TSG filed its notice of appeal on May 2, 2023, nearly two and a half years beyond the allowable 90-day timeframe. Unless TSG can provide a valid defense to overcome the 90-day jurisdictional requirement, its appeal will be deemed untimely, and the Board will lack jurisdiction.

*The COFD was Final*

TSG argues that the COFD should not be viewed as final since TSG was misled to believe that USACE would revisit the denied portion of its claim through REA settlement negotiations. Therefore, since the COFD was vitiated by this misbelief, TSG argues that the 90-day clock did not start on July 29, 2020, and its appeal is thus timely. (App. resp. at 10-12)

It is well established that if a contracting officer's decision is not truly final, but is being reconsidered, then a "failure to appeal the decision within the [90-day window] will not defeat . . . [a] contractor's opportunity to be heard on the merits." *Sach Sinha and Assocs.*, ASBCA No. 46916, 95-1 BCA ¶ 27,499 at 137,041 (quoting

*Johnson Controls, Inc.*, ASBCA No. 28340, 83-2 BCA ¶ 16,915 at 84,170). The finality of a contracting officer's decision may be vitiated by subsequent action that leads the contractor to reasonably conclude that the contracting officer was reconsidering the decision. *Precision Metals Corp.*, ASBCA No. 61422, 18-1 BCA ¶ 37,035 at 180,315 (citing *Sach Sinha*, 95-1 BCA ¶ 27,499 at 137,041-42).

The test for vitiation of a COFD is whether the contractor has presented evidence that shows it reasonably or objectively could have concluded that the contracting officer was reconsidering the decision. *Nauset Construction Corp.*, ASBCA Nos. 61673, 61675, 21-1 BCA ¶ 37852 at 183,817, *aff'd Nauset Construction Corp. v. Secretary of the Army* (Fed. Cir. March 4, 2024 slip op); *Precision Metals*, 18-1 BCA ¶ 37,035 at 180,315; *Aerospace Facilities Grp., Inc.*, ASBCA No. 61026, 18-1 BCA ¶ 37,105 at 180,605; *Sach Sinha*, 95-1 BCA ¶ 27,499 at 137,042.

On several occasions, this Board has recognized events that have led to the vitiation of a contracting officer's final decision. In each decision, the Board determined that it was reasonable for the contractor to believe that the decision was not truly final. For instance, in *Royal Int'l. Builders Co.*, ASBCA No. 42637, 92-1 BCA ¶ 24,684 at 123,135, the contracting officer issued a final decision but later decided to meet with the contractor after the contractor provided additional information for consideration. The Board stated that in agreeing to meet with the contractor and not cautioning that the original decision still applied, the contracting officer gave a reasonable appearance that the decision was being reconsidered, which ultimately caused its vitiation. *Id.* at 123,135-34; *see also Sach Sinha and Assocs., Inc.*, 95-1 BCA ¶ 27,499 at 137,042; *Johnson Controls, Inc.*, ASBCA No. 28340, 83-2 BCA ¶ 16,915 at 84,170 (a meeting held by the new contracting officer with the contractor after issuance of a final decision to further consider the contractor's claim was sufficient to vitiate the decision).

This Board has also indicated that there must be evidence that a contracting officer has communicated with or reached out to the contractor to discuss the contract following a final decision. For instance, in *Precision Metals Corp.*, ASBCA No. 61422, 18-1 BCA ¶ 37,035 at 180,314, soon after a final decision was issued, the contractor emailed the contracting officer and requested that the decision be reconsidered. The Board found no evidence of any further communications between the parties and concluded that "a request [for reconsideration] is not tantamount to reconsideration tolling the 90-day deadline." *Id.* at 180,315. Additionally, the Board in *Nauset Constr. Corp.*, ASBCA Nos. 61673, 61675, 21-1 BCA ¶ 37,852 at 183,818, ruled that communication between the parties that did not include the contracting officer was "not sufficient to reasonably lead [the contractor] to believe that the [contracting officer] was reconsidering the termination" thereby vitiating the final decision. *See also Shafi Nasimi Constr. and Logistics Co.*, ASBCA No. 59916, 16-1 BCA ¶ 36,215 at 176,698 (no vitiation where contractor failed to present

evidence that reconsideration discussions took place with the government or that the contracting officer met with or otherwise engaged the contractor following a contract default termination).

To support its position that it was misled by USACE, TSG primarily relies on a phone conversation that took place on July 29, 2020 between Mr. Sims and Mr. Curry the Regional Chief of Contracting for the USACE Southwestern Division (SOF ¶ 17). During this conversation, Mr. Sims states that he told Mr. Curry, "it was my understanding that the parties were still negotiating the REA settlement and that the final decision should not be viewed as final." Mr. Sims alleges that Mr. Curry responded by stating, "in his experience these types of contractual issues happen and the average time to reach a settlement is three to five years." (*Id.*) Mr. Sims claims that this conversation with Mr. Curry led him to believe that the COFD was not final since USACE was planning to reengage in settlement negotiations.

First, Mr. Curry has denied making this statement and believes that the conversation with Mr. Sims never took place (SOF ¶ 18). Second, even assuming that this conversation did take place, it was not with the contracting officer. In this case, Mr. Sims knew, or should have known, that Mr. Cole was the contracting officer and had the authority to make decisions regarding the contract. On January 7, 2020, responding on Colonel Robert Miceli's behalf, Mr. Curry explained in a letter to Mr. Sims that the contracting officer, Mr. Cole, was in receipt of his claim and would issue a final decision. Mr. Curry also stated that Mr. Sims could contact the contracting officer if he had any further questions. (SOF ¶ 11) Furthermore, on July 29, 2020, in response to a question about the COFD, Mr. Curry told Mr. Sims that the contracting officer would be in touch with him shortly to discuss his options and the path forward (SOF ¶ 16). Since Mr. Curry deferred to the contracting officer on multiple occasions, Mr. Sims should have known that it was the contracting officer who had authority over the contract, and therefore the claim and COFD, and not Mr. Curry. It is also worth noting that Mr. Sims corresponded with the contracting officer on various prior occasions such as TSG's submittal of its certified claim and TSG's receipt of the COFD, further suggesting that Mr. Sims knew that Mr. Cole was the appropriate contract authority (SOF ¶¶ 10, 13-14).

Other than Mr. Sims' self-serving statements, there is not a scintilla of evidence that would suggest that the contracting officer reconsidered his final decision in the 90 days following the decision, or even in the years that followed (SOF ¶ 20) There was no subsequent communication by the contracting officer about the COFD. There is nothing in the record showing the contracting officer reached out to TSG during the 90-day window, or at any time prior to the May 2, 2023 notice of appeal, to suggest reconsideration of the COFD. There is no evidence that TSG formally asked the contracting officer to reconsider his decision or provided him evidence that might cause him to reconsider the decision. Accordingly, we conclude that it was not

10

reasonable for TSG to believe that the contracting officer was reconsidering the final decision, thereby causing its vitiation.

TSG further contends that it was misled to believe that USACE would not make any remaining payments under the contract unless TSG executed a release of claims; meaning that settlement negotiations were still ongoing and that "USACE was going to revisit and re-engage REA settlement negotiations in order to reach a final agreement" (app. resp. at 6-7, 11; SOF ¶ 9). The facts here do not support TSG's position. TSG's argument relies on an email sent to Mr. Sims on February 12, 2019, in which Mr. Neill informed Mr. Sims that he would need to include a release of claims with his invoice to receive a final payment (SOF ¶ 8). However, in an affidavit, Mr. Neill states that he had a telephone conversation with Mr. Sims soon after this email where he explained to Mr. Sims that TSG could be paid even if they did not ultimately provide a release of claims (SOF ¶ 12). But, in this email, Mr. Neil informed TSG that it could list exclusions to the release and he even went so far so as to suggest an exclusion for TSG's previous REA (SOF ¶ 8). Thus, we do not see how any reasonable contractor could have been misled by Mr. Neil's comments to believe that a COFD issued 1.5 years prior was not final.

In addition, in the July 29, 2020 COFD, USACE approved progress payment No. 002 for the completed work that should have been paid to TSG and notified TSG of its appeal rights to the Board. In doing so, USACE acknowledged that this money was owed to TSG and did so without indicating that it was contingent on TSG executing a release of claims. (SOF ¶¶ 15, 19) Based on the foregoing, it was not reasonable for TSG to conclude that USACE would refuse payments to TSG due to the absence of a release of claims.

Accordingly, the COFD was not vitiated, and TSG's notice of appeal is untimely.

*The March 28, 2023 Revised Contract Modification Did Not Assert a Government Claim*

In the alternative, TSG argues that the March 28, 2023 unilateral contract modification is a government claim that superseded the July 28, 2020 COFD (SOF ¶ 21; app. resp. at 12-13). Since the COFD was superseded, TSG argues that the 90-day appeal window restarted on March 28, 2023, the day of the contract modification, and the appellant's appeal is therefore timely (app. resp. at 12-13). We disagree.

According to the CDA, "a contractor may appeal a Government claim to the appropriate board without submitting a claim of its own to the [contracting officer]." *Garrett v. General Elec. Co.*, 987 F.2d 747, 749 (Fed. Cir. 1993); 41 U.S.C §7103.

11

Additionally, the FAR states that a claim is a "written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to [the] contract." FAR 52.233-1(c), DISPUTES (MAY 2014); *Greenland Contractors I/S*, ASBCA Nos. 61113, 61248, 19-1 BCA ¶ 37,259 at 181,331.

As noted, TSG asserts USACE's unilateral modification was a government claim. We have held that a government's unilateral reduction of the contract price for unfinished and poorly performed work constituted a government claim. *JAAAT Tech. Servs., LLC*, ASBCA No. 61792 *et al*., 21-1 BCA ¶ 37,878 at 183,950. In addition, in *Dynport Vaccine*, we concluded that a government unilateral contract modification directing the appellant to perform corrective or replacement work at no cost to the government was also a government claim. ASBCA No. 59298, 15-1 BCA ¶ 35,860 at 175,333. In each of these actions, the government had a demand or assertion seeking relief against the contractor.

On the other hand, when a contract action has no demands or assertions by the government seeking relief against the contractor, a government claim cannot exist. *Lockheed Martin Aeronautics Co. v. Sec'y of Air Force*, 66 F.4th 1329, 1336 (Fed. Cir. 2023); *See also Bell Helicopter Textron*, ASBCA No. 35950, 88-2 BCA ¶ 20,656 at 104,392 (a unilateral contract definitization action in which the government established the price of a contract, as required by its terms, was not a government claim). We have also indicated that a simple administrative action is an action in which a contracting officer would not expect a challenge. *JAAAT*, 21-1 BCA ¶ 37,878 at 183,950.

Here, the revised modification specifically referenced the July 29, 2020 COFD, and did not set forth any demands or assertions seeking relief against TSG or other relief related to the contract. The purpose of the modification was to provide TSG's assignee with the funds that were accepted and approved in the COFD, updated to include interest. (SOF ¶ 21) According to the COFD, TSG was owed $8,657.78 for work that it had completed but was not paid due to an improperly rejected invoice (SOF ¶¶ 15, 19). Because USACE only sought to provide TSG with the money it was owed, including interest, the contract modification was an administrative action, not a new government claim. Accordingly, the contract modification failed to supersede the COFD and TSG's appeal remains untimely.

*Equitable Tolling*

Finally, TSG argues that USACE's actions following the submission of the COFD warrant investigation by the Board, and therefore the Board should allow the CDA's statute of limitations to be equitably tolled. In making its argument, TSG also

appears to suggest that equitable tolling is available to extend the CDA's 90-day window to file an appeal. (App. resp. at 13-14) While not rendering an opinion on whether equitable tolling can, or should be applied to the CDA's limitation on actions, we conclude, based on the facts of this appeal, that tolling is not warranted.

The record shows that the statutory 90-day appeal window started at the latest on July 29, 2020, the day TSG received the COFD by email. Ninety days later, the window ended. On May 2, 2023, TSG submitted its notice of appeal, nearly two and a half years beyond the allowable 90-day timeframe. (SOF ¶ 26) Equitable tolling is available only when a litigant shows that it (1) has been pursuing its rights diligently and (2) that some extraordinary stood in its way and prevented timely filing. *Menominee Indian Tribe of Wisconsin v. United States*, 577 U.S. 250, 255 (2016). As we have already described, there is nothing in the record that demonstrates that TSG diligently pursued its rights, nor any extraordinary circumstance that stood in its way and prevented it from filing an appeal. The record is more consistent with a contractor that largely sat on its hands in the months and years that followed the COFD. Equitable tolling has no application to this appeal.

<u>CONCLUSION</u>

USACE's motion is granted, and the appeal is dismissed for lack of jurisdiction.

Dated: April 3, 2024

OWEN C. WILSON
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals


I <u>concur</u>

MICHAEL N. O'CONNELL
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I <u>concur</u>

LAURA EYESTER
Administrative Judge
Armed Services Board
of Contract Appeals

13

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 63605, Appeal of The Sithe Group, LLC, dba TSG Industries, rendered in conformance with the Board's Charter.

Dated: April 3, 2024

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals